[No. S057191. Aug. 31, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE BIRKS, Defendant and Appellant.

**COUNSEL**

Howard J. Stechel for Defendant and Appellant.

Stephen Gilbert, Linda F. Robertson, C. Delaine Renard and John Phillipsborn as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, William M. Wood, Esteban Hernandez, Robert M. Foster and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

Dennis L. Stout, District Attorney (San Bernardino) and Grover D. Merritt, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence. The rule also accords both parties equal procedural treatment, and thus benefits and burdens both to the same degree. Neither party is unfairly surprised by instructions on lesser necessarily included offenses because, by definition, the stated charge gives notice to both that all the elements of any such offense are at issue. By the same token, neither party has a greater right than the other either to demand, or to oppose, instructions on lesser necessarily included offenses. Finally, if lesser offenses are necessarily included in the charge the prosecution has chosen to assert, instructions on the lesser offenses, even when given over the prosecution's objection, cannot undermine the prosecution's traditional authority to determine the charges.

More recently, *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] (*Geiger*) held that in certain circumstances, the defendant has a state constitutional right to instructions on lesser offenses that are *not* necessarily included in the stated charge, but merely bear some conceptual and evidentiary "relationship" thereto. Because the accusatory pleading gives the defendant no notice of such "nonincluded" offenses, *Geiger* concluded that instructions on lesser merely "related" offenses can be given *only upon the defendant's request.*

In this case, defendant was convicted of burglary after his request for instructions on trespass as a "lesser related offense" was refused. A majority of the Court of Appeal ruled that denial of the instructional request was prejudicial error under *Geiger.* It therefore overturned the burglary conviction.

We granted the People's petition for review to consider whether *Geiger* should be overruled. On careful reflection, we now agree that *Geiger* represents an unwarranted extension of the right to instructions on lesser offenses. *Geiger*'s rationale has since been expressly repudiated for federal purposes by the United States Supreme Court, and it continues to find little support in other jurisdictions. The *Geiger* rule can be unfair to the prosecution, and actually promotes inaccurate factfinding, because it gives the defendant a superior trial right to seek and obtain conviction for a lesser uncharged

offense whose elements the prosecution has neither pled nor sought to prove. Moreover, serious questions arise whether the holding of *Geiger*, ostensibly based on the due process clause of the California Constitution, can be reconciled with other provisions of the same charter. By according the defendant the power to insist, over the prosecution's objection, that an uncharged, nonincluded offense be placed before the jury, the *Geiger* rule may usurp the prosecution's exclusive charging discretion, and may therefore violate the Constitution's separation of powers clause.

For all these reasons, we conclude that *Geiger* can no longer be upheld. We will therefore reverse the judgment of the Court of Appeal.

### FACTS AND PROCEDURAL BACKGROUND

In two separate episodes, less than two weeks apart, defendant was caught red-handed after he entered closed and locked San Bernardino restaurants during the predawn hours. An information charged defendant with two counts of second degree commercial burglary. (Pen. Code, § 459; see also *id.*, §§ 460, 461.)[1]

The earlier incident, involving George's Smorgasbord, was charged as a misdemeanor (Count 2).[2] The later episode, involving the Southern Hospitality restaurant, was charged as a felony (Count 1). In order to enhance punishment on Count 1, the information alleged two prior serious or violent felony convictions for purposes of the "Three Strikes" law (§ 667, subds. (b)-(i)), and two prior prison terms (§ 667.5, subd. (b)). The charges were tried jointly.

The evidence on Count 2 established that defendant was arrested inside George's Smorgasbord. The restaurant's operator reported that no items were disturbed or missing.

The evidence on Count 1 established that defendant was chased down by private security guards who happened along as he crawled out of the

---

[1]Burglary is the entry of any of the statutorily enumerated premises, including certain inhabited dwelling places, "shop[s]," "store[s]," and "other building[s]," "with intent to commit grand or petit larceny or any felony." (Pen. Code, § 459.) Burglary of specified inhabited dwelling places is burglary of the first degree (*id.*, § 460, subd. (a) (former subd. 1)); "[a]ll other kinds of burglary are of the second degree" (*id.*, subd. (b) (former subd. 2)). All further unlabeled statutory references in this opinion are to the Penal Code.

[2]"Burglary in the second degree [is punishable] by imprisonment in the county jail not exceeding one year or in the state prison." (§ 461, subd. 2.) "A felony is a crime . . . punishable with death or . . . imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions." (§ 17, subd. (a).) If a crime is punishable either as a felony or as a misdemeanor, it is a misdemeanor "[w]hen the prosecuting attorney files . . . a complaint specifying that the offense is a misdemeanor." (§ 17, subd. (b)(4).)

Southern Hospitality restaurant through a broken glass panel in the front door. This time, the interior was disturbed, and food items were missing. Defendant exclaimed when apprehended that there were "five other people" in the restaurant. However, the front entrance was under constant observation from the moment defendant emerged. No other persons were seen to exit or were found inside, no other means of escape existed, and there was no other direct or circumstantial evidence that any other individual had entered.

The night clerk of a hotel next door to the Southern Hospitality restaurant identified defendant as the man who took a trash can liner bag from the hotel lobby moments before defendant was caught leaving the restaurant. Though the street was generally deserted, the clerk stated his vague impression that when defendant came into the hotel lobby, there was someone else outside the door. Immediately after defendant left the hotel, the clerk heard crashing sounds in the adjacent restaurant.

The property missing from Southern Hospitality restaurant was not found on defendant's person or otherwise accounted for. The trash bag was never recovered. The owner of Southern Hospitality restaurant agreed on the stand with the prosecutor's suggestion that a "man on a bicycle" could have ridden away with the missing food in the trash bag.[3]

Defendant did not present an affirmative defense. Though he offered no specific instruction, defendant nonetheless requested that the jury be instructed on trespass, a misdemeanor (§ 602), as a lesser related offense to the burglaries charged in both counts. Counsel stated he intended to argue in both cases that the evidence failed to establish the burglary element of intent to steal. The prosecutor consented to a trespass instruction on Count 2, where there was no evidence of missing or disturbed property, but he opposed such an instruction on Count 1.

The trial court agreed to instruct on the lesser offense in Count 2, "where we have the weaker evidence." On that count, without objection by defendant, the court gave a standard instruction supplied by the prosecutor.[4] The court refused trespass instructions on Count 1, stating its view that in that case, the evidence of intent to steal was "overwhelming."

---

[3]This was apparently an allusion to the second person the hotel clerk thought he had seen, but the clerk never mentioned a bicycle. The prosecutor returned to the bicycle theme in his closing argument. (See discussion, *post.*)

[4]The instruction provided: "Every person who willfully enters upon land or into buildings of any kind without the consent of the owner thereof and his or her agent and who occupies some portion or all thereof continuously or until ousted therefrom, and with the specific intent to dispossess those lawfully entitled to possession of the property from that portion of the

In the course of his argument on Count 1, the prosecutor wrongly stated that the hotel clerk had mentioned seeing a second person on a bicycle. The prosecutor again theorized that this was an accomplice of defendant's, who might have used the bicycle to carry away the missing property in the trash bag. The prosecutor suggested that defendant's purpose in entering both restaurants was to steal food to sell on the street.

The defense argument on Count 1 conceded defendant's presence in the Southern Hospitality restaurant. However, counsel emphasized the absence of evidence linking defendant to the stolen property. Counsel noted that defendant emerged from the restaurant empty-handed, did not violently resist apprehension, and mentioned other persons inside. Counsel suggested the hotel clerk might have mistaken defendant for the man who took the trash bag, but counsel urged that even if defendant took the bag, he lacked sufficient time between leaving the hotel and emerging from the restaurant to move and take items inside the restaurant premises. Counsel called the bicycle evidence "vague," though he never directly challenged the prosecutor's bicycle references as inaccurate. The various gaps and weaknesses in the prosecution's case, counsel insisted, negated proof beyond a reasonable doubt that defendant entered the Southern Hospitality restaurant with intent to steal.

The jury convicted defendant of two counts of second degree burglary, found true the two prior strikes, and upheld one of the prison term allegations.[5] The court sentenced defendant to a Three Strikes term of twenty-five years to life on Count 1, with a concurrent one-year enhancement for the prior prison term, and a concurrent one-year jail sentence on Count 2.

In a split decision, the Court of Appeal, Fourth Appellate District, Division Two, held that the trial court's refusal to give trespass instructions on Count 1 was reversible error. The majority (Justice McKinster with Justice Ward concurring) reasoned that even though trespass is not a lesser necessarily included offense of burglary, *Geiger*'s requirements for lesser *related* offense instructions had been met as to Count 1 because (1) the evidence of intent to steal, necessary for conviction of the stated charge of burglary, was "exceedingly weak," (2) defendant's unauthorized entry of the Southern Hospitality restaurant nonetheless exposed him to conviction of the lesser offense of trespass, (3) the theory of defense was consistent with conviction of the lesser offense, and (4) trespass was an offense closely related, by nature and on the evidence, to the charged burglary. Furthermore, the

property so occupied is guilty of a misdemeanor." (CALJIC No. 16.340 (5th ed. 1988); see § 602, subd. (*l*).)

[5]The prosecution had previously withdrawn the second such allegation.

majority concluded, the error was prejudicial. The majority insisted that the weak burglary case, several misstatements of evidence by the prosecutor (including the "the man on a bicycle" and "stealing for sale" references), and a "less than zealous" trial defense made it "reasonably probable" the jury would have reached a verdict more favorable to defendant had trespass instructions been given.

Justice Ramirez's dissent found no basis for trespass instructions because, as the trial court indicated, there was no evidence of any crime other than burglary. Moreover, the dissent concluded, even if there was error, it was harmless. The dissent stressed that defendant had been convicted of burglary on Count 2, where a trespass instruction was given and the evidence of intent to steal was weaker. The dissent also disputed the majority's claims of prosecutorial misconduct and ineffective assistance of counsel as factors in the prejudice analysis.

We granted review.

## DISCUSSION

■ The People's principal argument in this court is that *Geiger* should be overruled.[6] They urge that *Geiger*'s requirement of instructions on lesser related as well as necessarily included offenses (1) interferes with prosecutorial charging discretion, (2) continues to represent a minority rule among American jurisdictions, (3) has been undermined by persuasive intervening United States Supreme Court authority, and (4) has proven too difficult and confusing to apply. A number of considerations persuade us to agree that *Geiger* was wrongly decided.

In reaching this conclusion, we acknowledge the constraints imposed by the principle of stare decisis. ■ " 'It is, of course, a fundamental juris-prudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, "is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able

---

[6]Defendant insists the People waived this argument by failing to raise it in the Court of Appeal. (Cal. Rules of Court, rule 29(b)(1) ["As a matter of policy, . . . the Supreme Court normally will not consider: [¶] . . . any issue that *could have been* but was not raised in . . . the Court of Appeal . . . ." (Italics added.)].) The contention is specious. The Court of Appeal must follow, and has no authority to overrule, the decisions of this court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Because the issue now presented could not have been decided below, it is properly before us in the first instance. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 292, fn. 1 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*).)

to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law." [Citation.] [¶] It is likewise well established, however, that the foregoing policy is a flexible one which permits this court to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case. [Citation.] As we stated in *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 924 [221 Cal.Rptr. 575, 710 P.2d 375], "[a]lthough the doctrine [of stare decisis] does indeed serve important values, it nevertheless should not shield court-created error from correction." ' " (*People* v. *Latimer* (1995) 5 Cal.4th 1203, 1212-1213 [23 Cal.Rptr.2d 144, 858 P.2d 611] (*Latimer*), quoting *Moradi-Shalal, supra,* 46 Cal.3d 287, 296.)

■ Here we address an issue of state constitutional interpretation. The force of stare decisis in such cases, though substantial, is not as great as on questions of statutory construction. The Legislature is free to overturn our statutory readings when dissatisfied with them, but we are the final arbiters of the meaning of the California Constitution. If we have construed that document incorrectly, only we can remedy the mistake. (See *Latimer, supra,* 5 Cal.4th 1203, 1213; see also *Patterson* v. *McLean Credit Union* (1989) 491 U.S. 164, 172-173 [109 S.Ct. 2363, 2370-2371, 105 L.Ed.2d 132]; *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 921 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)[7]

In our view, the fundamental unsoundness of *Geiger*'s constitutional analysis outweighs any considerations which might favor its retention, despite its flaws, under the doctrine of stare decisis. We explain our reasons in detail.

Like most jurisdictions, California recognizes that an offense expressly alleged in an accusatory pleading may necessarily include one or more lesser offenses. The definition of a lesser necessarily included offense is technical and relatively clear. ■ Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. (*People* v. *Lohbauer* (1981)

---

[7]Nor can we discern reliance interests (see *Latimer, supra,* 5 Cal.4th at p. 1213; see also *Moragne* v. *States Marine Lines* (1970) 398 U.S. 375, 403 [90 S.Ct. 1772, 1789, 26 L.Ed.2d 339]) that would weigh against overruling *Geiger* as a general principle of criminal procedure. There has been no legislative reliance (cf. *Latimer, supra,* at p. 1214, and cases cited) on the *Geiger* rule, and we can conceive of no institutional or societal reliance so deeply rooted that such a change in the law would cause widespread inconvenience or harm. Any cognizable reliance interests of individual criminal defendants could be satisfied by making the new rule prospective only. (*Ibid.*; but see retroactivity discussion, *post.*)

29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183] (*Lohbauer*); *People* v. *Marshall* (1957) 48 Cal.2d 394, 405-407 [309 P.2d 456] (*Marshall*).)[8]

When an accusatory pleading alleges a particular offense, it thereby demonstrates the prosecution's intent to prove all the elements of any lesser necessarily included offense. Hence, the stated charge notifies the defendant, for due process purposes, that he must also be prepared to defend against any lesser offense necessarily included therein, even if the lesser offense is not expressly set forth in the indictment or information. (*Lohbauer, supra*, 29 Cal.3d at p. 369; *Marshall, supra*, 48 Cal.2d at p. 405; see also *Schmuck* v. *United States* (1989) 489 U.S. 705, 717-718 [109 S.Ct. 1443, 1451-1452, 103 L.Ed.2d 734] (*Schmuck*).) The statutory law of California explicitly provides that the defendant may be found guilty "of any offense, the commission of which is *necessarily included* in that with which he is charged." (§ 1159, italics added.)

■ Consistent with these principles, California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense *if there is substantial evidence the defendant is guilty only of the lesser.* (E.g., *People* v. *Barton* (1995) 12 Cal.4th 186, 194-195 [47 Cal.Rptr.2d 569, 906 P.2d 531] (*Barton*); *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913] (*Sedeno*); *People* v. *Hood* (1969) 1 Cal.3d 444, 448-450 [82 Cal.Rptr. 618, 462 P.2d 370] (*Hood*); see *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, & fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) ■ This requirement evolved from the broader and even older rule of California criminal procedure that the court must instruct sua sponte on "the 'general principles of law governing the case;' " i.e., those " 'closely and openly connected with the facts of the case before the court.' " (*Hood, supra*, 1 Cal.3d at p. 449; see, e.g., *People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Bevins* (1960) 54 Cal.2d 71, 75-77 [4 Cal.Rptr. 504, 351 P.2d 776]; *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v.

---

[8]Defendant's trial counsel in this case specifically advised the court he was not claiming trespass to be a lesser necessarily included offense of burglary, and defendant raises no such argument on appeal. It appears well settled that trespass is not a lesser necessarily included offense of burglary, because burglary, the entry of specified places with intent to steal or commit a felony (§ 459), can be perpetrated without committing any form of criminal trespass (see § 602). (E.g., *People* v. *Epps* (1973) 34 Cal.App.3d 146, 163 [109 Cal.Rptr. 733]; *People* v. *Harper* (1969) 269 Cal.App.2d 221, 222-223 [74 Cal.Rptr. 859]; *People* v. *Lopez* (1967) 249 Cal.App.2d 93, 102-103 [57 Cal.Rptr. 441].) Nor did the allegations set forth in Count 1 of the instant information necessarily include criminal trespass. Count 1 simply alleged that defendant "did willfully and unlawfully enter a commercial building . . . with intent to commit larceny and any felony."

*Putnam* (1942) 20 Cal.2d 885, 890-891 [129 P.2d 367].) ■■■ More recent decisions have suggested that a failure to instruct sua sponte on a lesser necessarily included offense supported by the evidence violates the defendant's "constitutional right to have the jury determine every material issue presented by the evidence." (*Sedeno, supra,* 10 Cal.3d at p. 720; see also, e.g., *People* v. *Wickersham* (1982) 32 Cal.3d 307, 335 [185 Cal.Rptr. 436, 650 P.2d 311] (*Wickersham*); *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

This instructional rule simply implements the principles of necessary inclusion set forth above, and as has long been recognized, it does so to the benefit of *both defense and prosecution. (Barton, supra,* 12 Cal.4th 186, 196.)[9] Where the evidence warrants, the rule ensures that the jury will be exposed to the full range of verdict options which, by operation of law and with full notice to both parties, are presented in *the accusatory pleading itself* and are thus closely and openly connected to the case. In this context, the rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." (*Wickersham, supra,* 32 Cal.3d 307, 324; see *Barton, supra,* 12 Cal.4th at p. 196). We recently stated that " '[t]rial courts have a sua sponte duty to instruct regarding lesser included offenses because *neither the defendant nor the People* have a right to incomplete instructions.' " (*Barton, supra,* 12 Cal.4th at p. 204, quoting *People* v. *Eilers* (1991) 231 Cal.App.3d 288, 296 [282 Cal.Rptr. 252], italics added.)

Fourteen years ago, *Geiger, supra,* 35 Cal.3d 510, first held that a defendant has a state constitutional right to instructions on uncharged lesser offenses, supported by the evidence, which are *not* necessarily included in the charged offense but merely bear some relationship thereto. *Geiger* further concluded that because the stated charge gives no notice of nonincluded offenses, instructions on mere related lesser offenses, unlike those on lesser necessarily included offenses, can only be given *upon the defendant's request or consent.*

Hence, under *Geiger,* if the defendant demands instructions on lesser related offenses, and the minimum requirements of *Geiger* are met, the court

---

[9]Indeed, as we noted in *Geiger* itself, the common law and statutory rule that a defendant may be convicted of any lesser offense necessarily included within the charged offense "developed originally to benefit *the prosecution* by permitting conviction of a lesser offense when there was a failure of proof as to the charged offense. [Citations.]" (*Geiger, supra,* 35 Cal.3d 510, 529, italics added; see *Schmuck, supra,* 489 U.S. 705, 717, fn. 9 [109 S.Ct. 1443, 1451].)

is absolutely obliged to present such offenses to the jury, and the prosecution cannot object on any basis. On the other hand, if the defendant fails to request lesser related offense instructions, and does not consent that they be given, neither the prosecution nor the court can cause such offenses to be submitted to the jury contrary to the defendant's right to notice of the charges.

In *Geiger*, we viewed the right to instructions on lesser related offenses as a mere logical extension and adaptation of the existing rule for lesser necessarily included offenses. But the two situations present starkly distinct constitutional and policy considerations. For multiple reasons, including the persuasive force of intervening United States Supreme Court authority, we now conclude that *Geiger* gave insufficient consideration to these distinctions, and thus reached an erroneous result. We turn to a detailed examination of *Geiger*.

The defendant in *Geiger* was charged with burglary and attempted burglary after he was identified as the person who smashed a service window in the rear of Jack's restaurant around 3 a.m. on a Monday morning. The restaurant's cash register was visible and within reach from the service window. However, the restaurant's owner had left the register open and empty, and nothing in the premises had been disturbed or taken. There was no evidence the defendant had entered the restaurant. The defendant did not testify but presented evidence that earlier the same morning, he had become angry when denied payment for his volunteer help in restocking the bar at the Dragon Moon Disco.

The trial court denied a defense request for instructions on vandalism because that offense is not necessarily included in burglary. In subsequent argument to the jury, defense counsel did not contest identity but theorized that the defendant smashed the restaurant window in an angry reaction to his treatment at the Dragon Moon Disco. Counsel conceded the defendant's guilt of vandalism, but she urged the evidence failed to demonstrate the intent to steal necessary for an attempted or completed burglary. Because the jurors had no option to convict of vandalism, counsel suggested, they must acquit.

The defendant was convicted of burglary. He appealed, urging that the trial court's refusal to instruct on vandalism was prejudicial error. We agreed. Under certain circumstances, we ruled, a defendant has a right to instructions on lesser offenses which bear a close relationship to the charged offense, even if not necessarily included therein.

At the outset, our opinion conceded that while the United States Supreme Court had acknowledged a right to instructions on lesser necessarily included offenses in state capital proceedings (*Beck* v. *Alabama* (1980) 447

U.S. 625 [100 S.Ct. 2382, 65 L.Ed.2d 392] (*Beck*)), it was unclear whether the federal Constitution granted any right to lesser offense instructions in other contexts. However, we found "[w]e need not anticipate resolution of the federal constitutional question . . . because the right to instructions on included offenses as an incident of due process *under the California Constitution* is well established. The necessity for instructions on *lesser offenses* is founded in the defendant's 'constitutional right to have the jury determine every material issue presented by the evidence.' " (*Geiger, supra,* 35 Cal.3d 510, 519, italics added.)

Reasoning that California's due process clause (Cal. Const., art. I, § 15) requires accurate factfinding procedures leading to deprivation of personal liberty, *Geiger* suggested that the removal of plausible lesser offenses from the jury's consideration undermines the reasonable doubt standard by imposing pressure to overconvict in order to avoid a complete acquittal. (*Geiger, supra,* 35 Cal.3d at p. 520.) *Geiger* then determined, in essence, that the considerations of fairness and accuracy which supported California's previously recognized entitlement to instructions on lesser necessarily included offenses applied with equal force to mere related lesser offenses. (*Geiger, supra,* 35 Cal.3d 510, 518-526.)

Our conclusions in *Geiger* were significantly influenced by a federal Court of Appeals decision, *United States* v. *Whitaker* (D.C. Cir. 1971) 447 F.2d 314 [144 App.D.C. 344] (*Whitaker*). *Whitaker* had held that a defendant's right, under rule 31(c) of the Federal Rules of Criminal Procedure (18 U.S.C.) (rule 31(c)), to request instructions on lesser necessarily included offenses shown by the evidence[10] could not be confined by a strict comparison of the elements of the greater and lesser offenses. Instead, the *Whitaker* court reasoned, "[a] more natural, realistic, and sound interpretation . . . is that defendant is entitled to invoke [r]ule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an 'inherent' relationship between the greater and lesser offenses, *i.e.,* they must relate to the protection of the same interests,[11] and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense."

[10]Rule 31(c) provides, in language similar to that of section 1159, that "[t]he defendant [in a federal prosecution] may be found guilty of an offense *necessarily included* in the offense charged . . . ." (Italics added.) Federal case law has long assumed that rule 31(c) entitles the parties to request appropriate *instructions* on lesser necessarily included offenses. (See, e.g., *Schmuck, supra,* 489 U.S. 705, 717 [109 S.Ct. 1443, 1451].)

[11]This aspect of *Whitaker* has commonly been referred to by California cases as the "same societal interest" test. (*Geiger, supra,* 35 Cal.3d 510, 532; see also, e.g., *People* v. *Farrow* (1993) 13 Cal.App.4th 1606, 1621 [16 Cal.Rptr.2d 844] (*Farrow*); *People* v. *Santos* (1990)

(*Whitaker, supra*, 447 F.2d at p. 319, original fn. omitted.)[12] *Geiger* accepted the essence of this rationale, declining to broaden California's definition of necessarily included offenses in the manner suggested by *Whitaker*, but reaching a similar result under the concept of related offenses.

According to *Geiger*, the "principal impediment" to extending California's instructional rule beyond necessarily included offenses was the defendant's constitutional right to notice of the charges. (*Geiger, supra*, 35 Cal.3d 510, 526.) As *Geiger* explained, this right protects the defendant from conviction, without his or her consent, of an offense neither stated nor necessarily included in the accusatory pleading. However, *Geiger* concluded, the problem of notice was easily overcome by holding that the court's obligation to instruct on a related but nonincluded offense should arise only when the defendant requests such instructions. (*Geiger, supra*, 35 Cal.3d 510, 526; see also *id.* at pp. 527-528.)

*Geiger* dismissed the People's protests that a *unilateral* right of the defendant to demand instructions on charges neither stated nor necessarily included in the accusatory pleading would usurp the prosecutor's charging discretion and would undermine the mutuality of rights and obligations between the parties. (*Geiger, supra*, 35 Cal.3d 510, 529-530.) Nor was it dispositive, *Geiger* insisted, that our statutes provide only for conviction of those offenses stated or necessarily included in the accusatory pleading. (*Id.* at pp. 528-529.)

*Geiger* did impose certain limits on the defendant's right to demand lesser related offense instructions. By analogy to the rule for lesser necessarily included offenses, *Geiger* concluded that instructions on lesser related offenses need be given only where there is "some [evidentiary] basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (*Geiger, supra*, 35 Cal.3d 510, 531.) *Geiger* further cautioned that "the [lesser related offense] instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense." (*Ibid.*)

---

222 Cal.App.3d 723, 739 [271 Cal.Rptr. 811] (*Santos*).) Our discussion below adopts this terminology.

[12]The inherent relationship limitation, *Whitaker* reasoned, was necessary to protect against abuse by the defendant, whose counsel "might be tempted to press the jury for leniency by requesting lesser included offense instructions on every lesser crime that could arguably be made out from any evidence that happened to be introduced at trial." (447 F.2d at p. 319.) *Whitaker*'s concern was prescient indeed. As we indicate below, we now believe that difficulty is an inherent feature of any effort to extend the right to instructions beyond offenses necessarily included in the charged offense.

Finally, *Geiger* struggled to explain what relationship between a charged offense and a lesser nonincluded offense might entitle the defendant to instructions on the latter. Our opinion supplied no precise definition of this relationship, stating only that "the purpose of the [instructional] rule," i.e., the interest in achieving a verdict consistent with the actual evidence, "serves to define its limits." (*Geiger, supra,* 35 Cal.3d at p. 531.) Hence, we suggested, "the [lesser] offense [on which instructions might be requested] must be one closely related to that charged and shown by the evidence," and must appear from the evidence "relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense." (*Ibid.*)

Applying these principles to the facts of *Geiger* itself, we determined that the defendant's request for vandalism instructions in that case should have been granted. Vandalism instructions, we explained, were consistent with the defense theory, which conceded responsibility for the broken window but urged that the motive was anger, not an intent to steal. The evidence, we noted, presented a plausible basis for this theory; nothing had been disturbed in the restaurant, and there was testimony about the defendant's anger and its cause. Finally, we observed, vandalism is closely related to burglary; the two offenses require similar proof and protect the same societal interest, security of property. (*Geiger, supra,* 35 Cal.3d at p. 532.) Invoking the strict standard of prejudice traditionally applied under California law to an erroneous failure to instruct on lesser offenses, we concluded the defendant's burglary conviction must be reversed. (*Ibid.*)

In dissent, Justice Richardson urged, among other things, that a rule allowing the defendant to obtain instructions on lesser uncharged and unincluded offenses interferes impermissibly "with . . . the prosecutor's discretionary function to select the offenses of which the defendant may be charged and convicted." (*Geiger, supra,* 35 Cal.3d 510, 533 (dis. opn. of Richardson, J.).) Justice Richardson also urged that the majority's guidelines for determining the necessary " close[] relat[ionship]" between the charged offense and lesser nonincluded offenses were too vague, broad, and imprecise (*ibid.*), and that the majority's rule would produce "unsound compromise verdicts" (*id.* at p. 534).

For multiple reasons, we now agree with the People, and with Justice Richardson, that *Geiger* was wrongly decided.

At the outset, we observe that since *Geiger* was decided, all arguable federal support for its conclusions has been withdrawn. In two post-*Geiger* cases, the rationale of that decision has been unequivocally repudiated by the United States Supreme Court. (*Hopkins* v. *Reeves* (1998) 524 U.S. 88 [118 S.Ct. 1895, 141 L.Ed.2d 76] (*Reeves*); *Schmuck, supra,* 489 U.S. 705.)

*Schmuck* held that the right of a federal noncapital defendant, under rule 31(c), to obtain instructions on a lesser offense necessarily included in the charge is limited by a strict elements test which compares only the statutory definitions of the two crimes. (*Schmuck, supra,* 489 U.S. 705, 715-721 [109 S.Ct. 1443, 1450-1453].) For multiple legal and policy reasons, *Schmuck* expressly disapproved the contrary inherent relationship test of *Whitaker, supra,* 447 F.2d 314, on which *Geiger* had heavily relied. (*Schmuck, supra,* 489 U.S. at pp. 715-716 [109 S.Ct. at pp. 1450-1451].)

*Reeves* concluded that a state does not violate the constitutional principles of *Beck, supra,* 447 U.S. 625, when it denies a capital defendant instructions on a lesser nonincluded offense pursuant to a general rule barring such instructions in all cases, both capital and noncapital. *Reeves* stressed, among other things, that most states provide for instructions "only" on lesser necessarily included offenses in both capital and noncapital cases, and "[w]e have never suggested that the Constitution requires anything more." (*Reeves, supra,* 524 U.S. 88, __ [118 S.Ct. 1895, 1901].) Like *Schmuck, Reeves* also identified serious legal and practical difficulties with any requirement that instructions on nonincluded offenses be given in criminal cases. (*Id.* at pp. __-__ [118 S.Ct. at pp. 1901-1902].)

Of course, these intervening developments are not dispositive here. ■ We may construe the California Constitution independently of federal law. (See, e.g., *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 353 [276 Cal.Rptr. 326, 801 P.2d 1077].) Moreover, stare decisis may provide a " 'cogent reason[]' " (*ibid.*) to retain, for California purposes, a constitutional principle once established, even if that principle subsequently appears at odds with federal jurisprudence. However, much of the reasoning of *Schmuck* and *Reeves* has persuasive application to the specific issue before us. The analyses of these cases do much to convince us that the rule of *Geiger* lacks solid footing.

In the first place, *Schmuck's* construction of the language and purpose of rule 31(c) is at odds with *Geiger's* prior treatment of the highly similar California provision, section 1159. Rule 31(c) and section 1159 both declare, in nearly identical terms, that the defendant may be found guilty of any offense "*necessarily* included" in the charge. (Italics added.)[13]

With little analysis, *Geiger* concluded that section 1159 is not "inconsistent" with the defendant's right to request instructions on nonincluded

---

[13]Section 1159 provides in pertinent part: "The jury, or a judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged . . . ." The corresponding language of rule 31(c) is set forth in footnote 10 (*ante,* p. 121).

offenses, because the statute simply confirms that the defendant cannot be convicted of such an offense *without his or her consent.* (*Geiger, supra,* 35 Cal.3d 510, 528, fn. 11.) By contrast, *Schmuck* has more recently ruled that rule 31(c) defines and limits the rights of both the defense and the prosecution, and permits a conviction *only* of the stated charge or a lesser offense included therein by virtue of its statutory elements.

In reaching this result, *Schmuck* first focused on the language of rule 31(c), reasoning as follows: Rule 31(c) speaks of *"an offense necessarily included* in the offense charged" (italics added), thus suggesting that the comparison is not between the charge and the conduct proven, but between two statutory offenses that share a technical legal relationship. Moreover, by providing simply that a defendant may be found guilty of a lesser necessarily included offense, the rule implies that lesser offense instructions should be equally available to the prosecution and the defense. However, such mutuality of rights would be upset by allowing the defendant to demand instructions on merely related offenses, because the defendant's constitutional right to notice of the charges would bar the prosecution from obtaining similar instructions over the defendant's objection. (*Schmuck, supra,* 489 U.S. 705, 717 [109 S.Ct. 1443, 1451].)

*Schmuck* also examined the history and purpose of rule 31(c). In this regard, *Schmuck* observed: "The [r]ule, which has not been amended since its adoption in 1944, is the most recent derivative of the common-law practice that permitted a jury to find a defendant 'guilty of any lesser offense necessarily included in the offense charged.' [Citation.] Over a century ago, Congress codified the common law for federal criminal trials, providing in the Act of June 1, 1872, ch. 255, § 9, 17 Stat. 198, that 'in all criminal causes the defendant may be found guilty of any offence the commission of which is necessarily included in that with which he is charged in the indictment.' Rule 31(c) was intended to be a restatement of this 'pre-existing law.' [Citation.] Accordingly, prevailing practice at the time of the [r]ule's promulgation informs our understanding of its terms, and, specifically, its limitation of lesser included offenses to those 'necessarily included in the offense charged.' " (*Schmuck, supra,* 489 U.S. 705, 718-719 [109 S.Ct. 1443, 1452].) The nature of this "prevailing practice" was clear, *Schmuck* asserted; both state and federal courts had "consistently" applied a strict elements approach to determine whether convictions for lesser unstated offenses were proper. (*Id.* at pp. 719-720 [109 S.Ct. at pp. 1452-1453], citing, inter alia, *People* v. *Kerrick* (1904) 144 Cal. 46, 47 [77 P. 711].)

The language of section 1159 does not differ from that of rule 31(c) in any respect material to *Schmuck*'s analysis. Moreover, in its current guise,

section 1159 has been in effect since 1872, the year the original statutory antecedent to rule 31(c) was enacted by Congress, and the California statute has received only technical amendments in the intervening 126 years. Indeed, section 1159 descends directly from a predecessor law adopted in the state's earliest days. (See Stats. 1851, ch. 29, § 424, p. 258.)[14] Until *Geiger* was decided, no California case had intimated that, despite section 1159, a defendant could unilaterally obtain instructions on lesser offenses which were not necessarily included, as California defines that concept, in the stated charge.[15] Contrary to *Geiger*, there is no reason to assume our statute has any different purpose, or any broader meaning, than rule 31(c) as construed in *Schmuck*.

But *Schmuck's* reasoning also impresses us for broader and more fundamental reasons. In particular, we are persuaded that the concern for mutual fairness between defense and prosecution, as set forth in *Schmuck*, is an important one, with independent foundation in California's law governing instructions on lesser offenses. The *Geiger* rule contravenes the principle of mutual fairness by giving the defendant substantially greater rights either to require, or to prevent, the consideration of lesser nonincluded offenses than are accorded to the People, the party specifically responsible for determining the charges. *Geiger's* soundness is therefore suspect.

*Geiger* had dismissed such fairness concerns, insisting that "some abstract notion of 'mutuality' " cannot outweigh the defendant's due process rights. (*Geiger, supra*, 35 Cal.3d 510, 526.) *Geiger* also reasoned that the prosecution suffers no material disadvantage in any event, because it has the power

---

[14]The 1851 law provided in pertinent part: "In all cases the defendant may be found guilty of any offence, the commission of which is necessarily included in that with which he is charged in the indictment . . . ." (Stats. 1851, ch. 29, § 424, p. 258.)

[15]*Geiger* implied that support for such a construction of section 1159 can be gleaned from our decision in *Lohbauer, supra*, 29 Cal.3d 364. If anything, however, *Lohbauer* weighs against *Geiger's* view of the statute. In *Lohbauer*, we rejected, on several grounds, the People's argument that the definition of lesser necessarily included offenses should be expanded so that a defendant could be convicted, even without his or her consent, of any lesser offense actually shown by the trial proof, so long as the defendant was not " 'misled to his prejudice and prevented from preparing an effective defense.' " (*Lohbauer, supra*, 29 Cal.3d at p. 370.) We first stated that we could not adopt the People's position, "for [to do so] would violate previously well settled interpretations of the statutory language. Section 1159 imposes statutory limitations which authorize a trier of fact to 'find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.' Our prior decisions interpreting the term 'necessarily included' uniformly have applied the traditional [elements] test . . . . No satisfactory argument has been advanced for modifying that well established definition." (*Ibid.*) *Lohbauer* then *separately* stated that "even if section 1159 *were* susceptible of an interpretation compatible with the new standard proposed by the People, serious due process questions would be raised by its adoption." (*Ibid.*, italics in original.)

to frame the charges at the outset, can usually " 'foresee' " whether the evidence will favor a lesser offense, and " 'should' " state any such lesser charge in the accusatory pleading itself. (*Id.* at p. 520, quoting *Whitaker, supra,* 447 F.2d 314, 321.)

However, we no longer find these assertions persuasive. Contrary to *Geiger*'s insinuation, California does not regard as merely abstract the principle of mutual fairness in the treatment of instructions on lesser offenses. Indeed, if federal jurisprudence under rule 31(c) is concerned with such mutuality, California law, with the notable exception of *Geiger,* has stressed the issue to an even greater degree.

Thus, the historical development of the California rule for instructions on lesser necessarily included offenses is founded to a considerable extent on the rule's benefits and burdens to *both* parties, and its evenhanded application to each. We have consistently held that neither party need request such instructions, *and neither party can preclude them,* because *neither* party has a greater interest than the other in gambling on an inaccurate all-or-nothing verdict when the pleadings and evidence suggest a middle ground, and *neither* party's "strategy, ignorance, or mistake[]" should open the way to such a verdict. (*Wickersham, supra,* 32 Cal.3d 307, 324; see also *Barton, supra,* 12 Cal.4th 186, 196; *Sedeno, supra,* 10 Cal.3d 703, 716.) Our courts, we have stressed, " 'are not gambling halls but forums for the discovery of truth.' " (*Barton, supra,* 12 Cal.4th at p. 196, quoting *People v. St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].)

Within the last three years, we have confirmed in particular that the *defendant*'s tactical objections cannot prevent the giving of instructions on lesser necessarily included offenses supported by the evidence. (*Barton, supra,* 12 Cal.4th at pp. 196-198.) We suggested, among other things, that a contrary rule would be "unfair to the *prosecution,*" because it would give the defendant unilateral power to force an all-or-nothing verdict when the trial evidence constituted less than conclusive proof of the stated charge and suggested the possibility of a lesser necessarily included offense. (*Id.* at p. 196, italics added.)

The *Geiger* rule, however, is calculated to produce just such an unfair one-way street where lesser related offenses are at issue. On the one hand, the defendant's right to notice of the charges limits the circumstances in which a jury, over the *defendant's* objection, may receive instructions on lesser offenses which are not necessarily included in those to which a plea was entered. On the other hand, if a lesser offense is related to the charge, as *Geiger* defines that term, *Geiger* gives the *defendant an absolute entitlement*

to such instructions on request, regardless of notice or prejudice to the People, and even over their objection.

Given the parties' differing trial burdens and responsibilities, the consequent tactical imbalance is significant and inappropriate. As discussed in greater detail below, the prosecution, not the defendant, is the party traditionally responsible for determining the charges. When the prosecution discharges this responsibility by filing an accusatory pleading, it assumes the obligation to prove *beyond a reasonable doubt* all the elements, but only the elements, of the stated charge and any lesser offense necessarily included therein. (See *Reeves, supra*, 524 U.S. 88, ___ [118 S.Ct. 1895, 1902]; see also discussion, *post.*) Unless the defendant agrees, the prosecution cannot obtain a conviction for any uncharged, nonincluded offense. Hence, the prosecution must focus all its resources and efforts on the stated charges. On the other hand, the defendant has no affirmative burden on any offense, charged or uncharged. The defense seeks only to persuade the jury by some means that the prosecution has failed to prove one or more elements of the stated offense beyond a reasonable doubt.

If the evidence presented by both parties convinces the prosecution (or the court) that not the stated charge, but only some lesser related offense, may have been established, and that the jury should therefore consider this option, the defendant may be able to block such consideration by raising notice objections, thus leaving complete acquittal as the only alternative to conviction as charged. On the other hand, if the prosecution *opposes* the jury's consideration of a lesser related offense which the prosecution did not charge, assumed no obligation to prove, and may thus have overlooked in presenting its case, the defendant, under *Geiger*, has the unqualified right to override the prosecution's objections. Regardless of prejudice to the prosecution, the defendant may insist that the jury be instructed on the lesser offense, thereby acquiring a third-option hedge against conviction of the charged offense.

Where lesser related offenses are concerned, the *Geiger* rule therefore may actually permit and encourage a one-sided use of the "gambling hall" strategies we have consistently denounced. If the evidence suggests the possibility of a related lesser offense neither charged nor tried by the prosecution, the defendant either may demand that instructions on that offense be given, or may raise notice objections which, if successful, will prevent such instructions from being given at the prosecution's behest. *Geiger* thus affords the defense a superior right at trial to determine whether the jury will consider a lesser offense alternative, or instead will face an all-or-nothing choice between conviction of the stated charge and complete acquittal. Such a rule is neither just nor rational.

Though *Geiger* suggested otherwise, the proper balance is not restored by virtue of the prosecution's authority to frame the accusatory pleading at the outset. In the first place, *Geiger*'s insinuation that the accusatory pleading is obliged to state every charge supported by the evidence is false. On the contrary, the prosecution, the traditional charging authority, has broad discretion to base its charging decisions on all the complex considerations pertinent to its law enforcement duties. (See discussion, *post.*)

Moreover, the prosecution chooses the charges on the basis of the information then available. Indeed, those charges must conform to the evidence adduced in pretrial probable cause proceedings (§ 739 [information after preliminary examination]; see §§ 889, 939.8 [indictment by grand jury]), at which a full defense is rarely presented. Often evidence suggesting that the true crime, if any, is other than the charged or necessarily included offenses comes to light only in the course of trial, when the complete defense case is first revealed. The prosecution thus may suffer unfair prejudice when the trial evidence first suggests the lesser offense, and the defendant then has the superior power to determine whether instructions thereon shall be given.

Nor is unfairness to the prosecution fully alleviated by virtue of the statutory provisions allowing midtrial amendment of the pleadings. Such provisions do not address the inherent prejudice the prosecution suffers when evidence suggesting guilt only of a lesser uncharged offense is first disclosed at trial. Moreover, because the Constitution demands that the defendant have fair notice of the charges, the prosecution's statutory right of amendment to conform to proof is more restricted than the defendant's *Geiger* right to demand instructions on uncharged lesser related offenses that may be suggested by the evidence. ██ "An indictment . . . cannot be amended . . . to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009.) Moreover, after arraignment on the original charges, the accusatory pleading can be amended only by "order or permi[ssion]" of the court. (*Ibid.*) The court has broad discretion to deny leave to amend, and must do so if the amendment would prejudice the defendant's substantial rights. (See, e.g., *People* v. *Brown* (1973) 35 Cal.App.3d 317, 322 [110 Cal.Rptr. 854]; *People* v. *Hernandez* (1961) 197 Cal.App.2d 25, 31 [17 Cal.Rptr. 20]; see also *People* v. *Valladoli* (1996) 13 Cal.4th 590, 606, fn. 3 [54 Cal.Rptr.2d 695, 918 P.2d 999] [construing similar provision of § 969a].) Finally, any affirmative right of the prosecution to seek leave to amend the pleadings does not address the converse difficulty presented by *Geiger*. If the prosecutor *declines* to amend to allege a lesser related offense on which its case has not focused, the *defendant* can demand that the lesser offense be placed before the jury anyway, and the prosecutor is powerless to object.

This inequality of rights and burdens is thus no mere abstraction. Instead, it directly contradicts the principles of neutrality and mutual fairness which, to a substantial degree, have informed and justified the rule requiring instructions on lesser necessarily included offenses. Moreover, the inherent imbalance of *Geiger* interferes in particular with a role traditionally accorded to the People alone, the responsibility to determine the charges. (See discussion, *post.*) These concerns are an important reason why we now determine that the rule announced in *Geiger* is incorrect.

In the course of their reasoning, *Schmuck* and *Reeves* also raised numerous practical arguments against instructions on nonincluded lesser offenses. Adopting, for purposes of rule 31(c), a strict elements test over the inherent relationship concept embraced by *Geiger*, *Schmuck* emphasized that an elements standard is "certain[,] . . . predictable," and "econom[ical]," (*Schmuck, supra*, 489 U.S. 705, 720 [109 S.Ct. 1443, 1452]), while the inherent relationship test is "rife with the potential for confusion." (*Id.* at p. 721 [109 S.Ct. at p. 1453].)

In this regard, *Schmuck* advanced the following points: The elements approach depends solely on a comparison of statutory definitions, not vague evidentiary inferences. Hence, both sides know in advance what instructions will be available and can plan their trial strategies accordingly. By the same token, appellate courts can decide claims of error "without reviewing the entire evidentiary record for [inferences and] nuances . . . ." (489 U.S. at p. 721 [109 S.Ct. at p. 1453].) By contrast, the inherent relationship test adds burdensome layers of analysis and " 'involves questions of degree and judgment,' " increasing the risk that trial and appellate courts will differ about the necessity for particular instructions. (*Ibid.*) Such unpredictability and uncertainty are not desirable in rules of criminal procedure. (*Id.* at pp. 720-721 [109 S.Ct. at pp. 1452-1453].)

*Reeves* cited similar reasons, among others, for rejecting a capital defendant's claim that he was constitutionally entitled to instructions on a lesser noncapital offense supported by the evidence, even if the lesser offense was not necessarily included in the capital charge. This would "require[] in effect," *Reeves* asserted, "that States create lesser included offenses to all capital crimes, by requiring that an instruction be given on some *other* offense—what could be called a 'lesser related offense'—when no lesser included offense exists. Such a requirement [would] not only [be] unprecedented [as a matter of federal constitutional law], but also unworkable. Under such a scheme, there would be no basis for determining the offenses for which the instructions are warranted." (*Reeves, supra*, 524 U.S. 88, __ [118 S.Ct. 1895, 1901].)

These assertions, too, have merit in the context of California law. Once the relative precision of necessary inclusion is left behind, the parties and the courts are cast adrift in a trackless sea. Because the evidence of uncharged and nonincluded offenses may develop only at trial, the difficulties of planning trial strategy are greatly enhanced. Moreover, there can be no clear standards for determining when a lesser offense, though not necessarily included in the charge, is nonetheless related for instructional purposes. This leaves an accused potentially infinite latitude to argue a sufficient link.

The resolution of requests for instructions on lesser related offenses thus involves nuanced " 'questions of degree and judgment.' " (*Schmuck, supra,* 489 U.S. 705, 721 [109 S.Ct. 1443, 1453].) Yet because a right to instructions such as that articulated in *Geiger* is absolute where it exists at all, the margin of error in ruling on a demand for lesser related offense instructions is small. Such conditions create an unreasonable risk that trial and appellate courts will disagree in a particular case,[16] and that appellate precedents will conflict, thus detracting from the fair and efficient administration of justice.

These problems have materialized under *Geiger*. *Geiger* itself had acknowledged that "[w]e cannot . . . anticipate all of the varied circumstances in which instructions on related offenses may be requested," and *Geiger* warned that the definitional standards therein set forth might prove, in the light of experience, to be "over- or underinclusive." (*Geiger, supra,* 35 Cal.3d 510, 532, fn. 12.) *Geiger*'s apprehension was well justified. California courts have since grappled earnestly but uncertainly with the numerous difficulties of applying *Geiger* to the diverse facts of individual cases. (See, e.g., *People v. MacKenzie* (1995) 34 Cal.App.4th 1256, 1279-1280 [40 Cal.Rptr.2d 793]; *People v. Whitfield* (1993) 19 Cal.App.4th 1652, 1657-1658 [24 Cal.Rptr.2d 210]; *People v. Jones* (1993) 14 Cal.App.4th 1252, 1257-1258 [18 Cal.Rptr.2d 673]; *Farrow, supra,* 13 Cal.App.4th 1606, 1621-1626; *People v. Araujo* (1992) 10 Cal.App.4th 700, 704-705 [12 Cal.Rptr.2d 662]; *People v. Randle* (1992) 8 Cal.App.4th 1023, 1027 [10 Cal.Rptr.2d 804]; *People v. Hill* (1992) 6 Cal.App.4th 33, 45-48 [8 Cal.Rptr.2d 123]; *People v. Richmond* (1991) 2 Cal.App.4th 610, 618 [3 Cal.Rptr.2d 252]; *People v. Woods* (1991) 226 Cal.App.3d 1037, 1050-1052 [277 Cal.Rptr. 269]; *Santos, supra,* 222 Cal.App.3d 723, 739; *People v. Blevins* (1990) 220 Cal.App.3d 1413, 1416-1417 [270 Cal.Rptr. 172]; *People v. White* (1986) 185 Cal.App.3d 822, 829-830 [231 Cal.Rptr. 569]; *People v. Boyd* (1985) 167 Cal.App.3d 36, 45-48 [212 Cal.Rptr. 873].)

---

[16]In other words, if the evidence would support conviction for *any* less serious uncharged offense, the trial court's denial of a defense demand for instructions on that lesser offense produces a high risk of built-in error on appeal. This, in turn, creates an incentive for trial courts to grant requests for lesser related offense instructions under the broadest possible circumstances, without careful evaluation, in the knowledge that errors favoring the defense cannot be appealed and are unlikely to be redressed by extraordinary writ.

*Reeves* also rejected the premise, central to *Geiger*, that unconstitutional factfinding distortion will arise unless the jury, otherwise faced with an all-or-nothing choice between conviction of the charge and complete acquittal, is allowed the third option of a lesser related, though nonincluded, offense. *Reeves* explained that when the third option principle is applied outside the context of lesser necessarily included offenses, it actually introduces "another kind of distortion at trial." (*Reeves, supra,* 524 U.S. 88, __ [118 S.Ct. 1895, 1902].)

As *Reeves* pointed out in the context of that case, "[t]he State . . . assumed the obligation of proving only [the charged] crime, as well as any lesser included offenses that existed under State law and were supported by the evidence; its entire case focused solely on that obligation. To allow respondent to be convicted of homicide offenses that are *not* lesser included offenses . . . , therefore, would be to allow his jury to find beyond a reasonable doubt elements that the State had not attempted to prove, and indeed that it had ignored during the course of trial. This can hardly be said to be a reliable result . . . ." (*Reeves, supra,* 524 U.S. 88, __ [118 S.Ct. 1895, 1902], italics in original.)

We find this analysis utterly convincing, and it exposes a central fallacy of *Geiger*. While reliability interests may well be enhanced by instructions on lesser necessarily included offenses, *Geiger*'s assumption that the same benefit flows from instructions on nonincluded offenses is untrue.

As *Reeves* suggested, the reasons for this conclusion are straightforward. The prosecution assumes the obligation to prove the stated charge and any necessarily included offense beyond a reasonable doubt. Thus, at the very least, any conviction of a charged or necessarily included offense is based on evidence adduced by the prosecution in its conscious effort to sustain that heavy burden.

However, the prosecution undertakes no duty to prove uncharged, nonincluded offenses, and such proof may well be overlooked in the presentation of the prosecution's case. The defense has no duty to prove any crime by any standard. Thus, and particularly when the prosecution does not consent, the giving of instructions on lesser merely related offenses invites the jury to convict the defendant of a crime that no party may have attempted to establish beyond a reasonable doubt. Insofar as the *Geiger* rule thus subverts, rather than protects, the requisite standard of proof for conviction of crimes, the rule's continued application cannot be sustained.

The People note that even when announced, the *Geiger* rule, insofar as it expanded instructional requirements beyond offenses necessarily included in

the charge, represented a distinct minority position among American jurisdictions. Since *Geiger* was decided, the People stress, "the ranks of the states following [*Geiger*'s] approach [have not] swelled." We agree that the continuing failure or refusal of most other states to embrace *Geiger*'s rationale is additional strong evidence of the flaws inherent in the *Geiger* analysis. This factor, among many others, persuades us against retention of the *Geiger* rule.[17]

---

[17]The prevailing American rule is that the defendant is entitled to instructions only on lesser necessarily included offenses. (See Annot. (1986) 50 A.L.R.4th 1081, 1096-1113, and cases cited.) *Geiger* noted that five states, by statute or case law, had recognized, in some form, a right to instructions on lesser uncharged offenses demonstrated by the evidence even though the lesser offenses did not strictly satisfy the elements or accusatory pleading tests for necessary inclusion in the charged offense. (*Geiger, supra*, 35 Cal.3d 510, 522-524, citing *State* v. *Gopher* (1981) 194 Mont. 227 [633 P.2d 1195, 1197-1198] [lesser included offense doctrine permits defendant to request instructions on lesser offenses supported by "any" trial evidence]; *State* v. *Kupau* (1980) 63 Hawaii 1 [620 P.2d 250, 252] [state statute defines lesser included offense to include offense which simply requires "less serious injury . . . to the same person, property, or public interest," or less culpable state of mind, than charged offense (see also Model Pen. Code, § 1.07, subd. (4)(c))]; *State* v. *Boyenger* (1973) 95 Idaho 396 [509 P.2d 1317, 1321] (*Boyenger*) [whether one offense is necessarily included in another depends not only on pleadings but on trial evidence]; *People* v. *Rivera* (1974) 186 Colo. 24 [525 P.2d 431, 434] [defendant may request instructions on lesser nonincluded offense under rule which entitles defendant to instructions on "the defense theory of the case as revealed by the evidence"]; *People* v. *Richardson* (1980) 409 Mich. 126 [293 N.W.2d 332, 338-339] [under Michigan's rule entitling defendant to instructions on all material issues presented by the evidence, evidence supported murder defendant's request for instructions on lesser nonincluded offenses of involuntary manslaughter and reckless use of a firearm].) The People now cite an additional pre-*Geiger* decision which provides some support for the *Geiger* rationale. (*State* v. *Baker* (Utah 1983) 671 P.2d 152, 154-159 [under Utah statute, *defendant* may request instructions on lesser offense as necessarily included in charged offense if the elements of the two offenses overlap to some degree and the trial evidence adduced for the greater offense includes proof of some or all the overlapping elements].) Since *Geiger* was decided, courts in at least two additional states have concluded that the technical niceties of necessary inclusion should not limit the defendant's right to request instructions on lesser offenses shown by the evidence. (*Moore* v. *State* (1989) 105 Nev. 378 [776 P.2d 1235, 1238-1239] [following *Geiger*]; *State* v. *Clarke* (1985) 198 N.J.Super. 219 [486 A.2d 935, 938] [where charge was attempted burglary, which has no lesser included offense due to "inchoate" nature of crime, technicalities should not preclude defense request for instructions on criminal mischief as lesser offense shown by the evidence]; see also *State* v. *Minano* (Alaska 1985) 710 P.2d 1013, 1016 [under state procedural·rule modeled on rule 31(c), instructions are permitted only on lesser necessarily included offenses, but necessary inclusion must be viewed from perspective of "the facts charged in the indictment, in light of the evidence actually presented"].) Michigan continues to recognize both "necessary" and "cognate" included offenses; the latter may contain elements not shared by the charged offense so long as the offenses are closely related by nature and on the evidence. (*People* v. *Beach* (1988) 429 Mich. 450 [418 N.W.2d 861, 866-867].) As noted in *Reeves, supra*, (524 U.S. 88, __-__, fn. 6 [118 S.Ct. 1895, 1901]), Nebraska's standard for lesser included offenses has alternated between a strict elements test and the cognate evidence test; Nebraska currently employs the former. (See *State* v. *Williams* (1993) 243 Neb. 959 [503 N.W.2d 561, 564-565], overruling *State* v. *Garza* (1990) 236 Neb. 202 [459 N.W.2d 739, 743].) Since *Geiger*, Idaho has retreated to traditional elements and

One final consideration influences us to retreat from *Geiger*'s holding that the California Constitution grants criminal defendants an affirmative right to insist upon consideration of uncharged and nonincluded offenses over the prosecution's objection. Despite the *Geiger* majority's contrary conclusion, a serious question arises whether such a right can be reconciled with the separation of powers clause of the same document.

The California Constitution (art. III, § 3) provides that "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

■ It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. (E.g., *People* v. *Eubanks* (1996) 14 Cal.4th 580, 588-589 [59 Cal.Rptr.2d 200, 927 P.2d 310]; *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063].) This prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from " 'the complex considerations necessary for the effective and efficient administration of law enforcement.' " (*People* v. *Keenan* (1988) 46 Cal.3d 478, 506 [250 Cal.Rptr. 550, 758 P.2d 1081], quoting *People* v. *Heskett* (1982) 30 Cal.3d 841, 860 [180 Cal.Rptr. 640, 640 P.2d 776].) The prosecution's authority in this regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch. (*People* v. *Wallace* (1985) 169 Cal.App.3d 406, 409 [215 Cal.Rptr. 203]; *People* v. *Adams* (1974) 43 Cal.App.3d 697, 708 [117 Cal.Rptr. 905]; see also *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752 [6 Cal.Rptr. 813].)

In his *Geiger* dissent, Justice Richardson argued vigorously that allowing a defendant to dictate the consideration of crimes neither charged nor necessarily included in the charge violates these principles. Quoting an earlier Court of Appeal opinion by Justice Feinberg, Justice Richardson reasoned that " '[t]o hold that a defendant can require that a jury be told that he can be convicted of crime X when he has been charged with crime Y, a charge that does not necessarily include crime X, is to hold that the defendant, in effect, has the power to determine what crime he is charged with, *a power that resides exclusively with the prosecution.*' " (*Geiger, supra,* 35

---

pleadings tests for included offenses. (*State* v. *Curtis* (1997) 130 Idaho 522 [944 P.2d 119, 121], overruling *Boyenger, supra.*)

Cal.3d 510, 533 (dis. opn. of Richardson, J.), quoting *People* v. *West* (1980) 107 Cal.App.3d 987, 993 [165 Cal.Rptr. 24], italics added by *Geiger*.)[18]

The *Geiger* majority rejected this argument on the premise that once the prosecution has had a "full opportunity to exercise [its] charging powers," and the case is at issue, the process, including the instructions, by which the defendant's guilt or innocence is thereafter determined are exclusively judicial matters. (*Geiger*, *supra*, 35 Cal.3d 510, 530.) The majority (*id.* at pp. 529-530) relied heavily on broad language to that effect in *People* v. *Tenorio* (1970) 3 Cal.3d 89, 94 [89 Cal.Rptr. 249, 473 P.2d 993] (*Tenorio*). But *Tenorio*, like our more recent decision in *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*), concerned only the established judicial power to *dispose* of charges and sentencing allegations the prosecution *has* chosen to submit. Neither of these decisions stands for the proposition that a court, upon the defendant's demand, may add new charges without the prosecution's consent. Despite the *Geiger* majority's contrary conclusion, the concern arises that whether additional nonincluded offenses are judicially injected at the pleading stage, or during the trial itself, the prosecutorial discretion to control the charges is equally undermined.

We need not finally resolve the separation of powers issue here. ■ It is enough to invoke the established principle that when reasonably possible, courts will avoid constitutional or statutory interpretations in one area which raise " 'serious and doubtful constitutional questions' " (*Romero*, *supra*, 13 Cal.4th 497, 509, quoting *Miller* v. *Municipal Court* (1943) 22 Cal.2d 818, 828 [142 P.2d 297]) in another.

Our recent *Romero* decision applied this principle where an issue of statutory construction implicated the separation of powers clause. In *Romero*, we faced a provision that might or might not be read to require the prosecutor's approval before the court could exercise, in a Three Strikes case, its general statutory authority to *dismiss* a sentencing allegation in furtherance of justice. In order to free the Three Strikes statute from constitutional doubt, we adopted the latter interpretation, noting the rule of *Tenorio* and its progeny that the Legislature cannot adopt laws giving the prosecutor power to "veto . . . judicial decisions related to . . . sentencing or other *disposition* of criminal charges." (*Romero*, *supra*, 13 Cal.4th 497, 512, italics added.)

---

[18]Lesser *necessarily included* offenses do not present a similar problem, because the prosecution understands that when it chooses to charge the greater offense, it is by definition charging the elements of every lesser offense necessarily included therein. Hence, by its selection of the stated charge, the prosecution has retained the exclusive power to determine the specific crime or crimes which may be presented to the jury.

*Romero* thus supports the principle that the power to *dispose* of charges is judicial in nature, but as explained above, it is ordinarily the prosecution's function to *select* and *propose* the charges. Hence, separation of powers difficulties may arise, as they did in *Romero*, from a constitutional interpretation that requires a *judicial* officer, acting at the defendant's unilateral insistence, to *add* lesser nonincluded offenses which the prosecution has chosen to withhold in the exercise of its charging discretion, and to which it objects. This substantial concern additionally informs our conclusion, contrary to *Geiger*, that the California Constitution should not be construed to grant criminal defendants an affirmative right to insist on jury consideration of nonincluded offenses without the prosecutor's consent.

█ For all the foregoing reasons, we conclude, *Geiger* was wrong to hold that a criminal defendant has a unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge. *Geiger* is therefore overruled.[19]

We further determine that our holding, as is customary for judicial case law, may be applied to the instant defendant himself, and is otherwise fully retroactive. Due process does not preclude such a result, since the new rule we announce today neither expands criminal liability nor enhances punishment for conduct previously committed. (*People* v. *Cuevas* (1995) 12 Cal.4th 252, 275 [48 Cal.Rptr.2d 135, 906 P.2d 1290] (*Cuevas*); see *Bouie* v. *City of Columbia* (1964) 378 U.S. 347, 352-354 [84 S.Ct. 1697, 1701-1703, 12 L.Ed.2d 894].) On the contrary, our holding merely withdraws the procedural opportunity for conviction of a *reduced* offense not encompassed by the accusatory pleading and selected solely by the defendant.

No other inequity arises from retroactive application of today's decision. When he committed his criminal conduct, defendant acquired no cognizable

---

[19]Insofar as a defendant could previously complain on appeal if convicted of an uncharged and nonincluded offense without his or her consent (see *People* v. *Toro* (1989) 47 Cal.3d 966, 971 [254 Cal.Rptr. 811, 766 P.2d 577] (*Toro*)), that right is not abrogated by today's holding. On the other hand, if the defendant wrongly persuades the trial court to instruct the jury on an uncharged, nonincluded offense despite the prosecutor's objection, or fails to object when the prosecutor or the court proposes that such instructions be given, no complaint about the consequences can thereafter be raised on appeal. (See *Barton*, *supra*, 12 Cal.4th 186, 198 [invited error doctrine]; *Toro*, *supra*, 47 Cal.3d at p. 976 [defendant's failure to object to instruction on lesser nonincluded offenses is deemed consent and waiver].) We note further that our decision does not foreclose the parties from agreeing that the defendant may be convicted of a lesser offense not necessarily included in the original charge. When the parties consent to such a procedure, with or without formal amendment of the pleadings, neither can claim unfairness, and the prosecution's role in determining the charges is not improperly compromised. Indeed, there may be many cases in which both parties are persuaded that their best interests lie in such a procedure. Finally, nothing in our holding prevents the defendant from arguing in any case that the evidence does not support conviction of any charge properly before the jury, and that complete acquittal is therefore appropriate.

reliance interest (*Cuevas, supra,* 12 Cal.4th 252, 276) in escaping conviction on the pleadings by the means set forth in *Geiger.* Defendant does not suggest his case would have been conducted differently absent the *Geiger* rule (see *Cuevas, supra,* at p. 276), and neither he nor any other defendant could easily make such a claim. With or without *Geiger,* a criminal defendant has the same incentive to establish, by whatever available means, that the prosecution has failed to prove the elements of charged or necessarily included offenses beyond a reasonable doubt.

Nor would retroactive operation sandbag defendants by applying against their appeals a new and unforeseen objection and waiver requirement which it is then too late for them to satisfy. (See, e.g., *People* v. *Scott* (1994) 9 Cal.4th 331, 357-358 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People* v. *Welch* (1993) 5 Cal.4th 228, 237-238 [19 Cal.Rptr.2d 520, 851 P.2d 802].) Indeed, defendant in this case fully preserved his *Geiger* claim for appeal by requesting lesser related offense instructions.

We therefore hold, for the reasons stated in this opinion, that the defendant's request for instructions on trespass as a lesser alternative offense to the burglary charged in Count 1 of the information was properly refused. The Court of Appeal thus reached an erroneous result when it determined that the denial of such instructions made it necessary to overturn defendant's conviction on Count 1. Accordingly, the judgment of the Court of Appeal must be reversed.

Defendant also raised additional challenges to his convictions in the Court of Appeal. The Court of Appeal rejected these arguments (acting, in the case of Count 1, for purposes of guidance in any retrial), and we have no occasion here to review its rulings in these respects. However, because the Court of Appeal reversed defendant's Count 1 conviction on *Geiger* grounds, it did not fully address defendant's several claims of sentencing error under the Three Strikes law. On remand, the Court of Appeal should proceed to resolve those issues.

### DISPOSITION

The judgment of the Court of Appeal is reversed insofar as it holds that defendant's conviction must be reversed for *Geiger* error. The cause is remanded to the Court of Appeal for further proceedings consistent with the views expressed in this opinion.

George, C. J., Kennard, J., and Chin, J., concurred.

**MOSK, J.**—I concur in the result.

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], we held, over a dissent by Justice Richardson, that, at the defendant's request, and under certain conditions, the trial court must instruct the jury on an offense lesser than, and "related" to, the offense charged.

With the experience of more than a decade, I believe that the rule of *Geiger* has proved to be unworkable. In *Geiger* itself, we failed to articulate an implementing standard, a test for determining whether a lesser offense is "related" to the charged offense. We implied that such a standard would articulate itself in the application. That was indeed our hope. It has not been fulfilled.

I do not believe, however, that the rule of *Geiger* is, in any way, violative of the California Constitution. Indeed, unlike the majority, I entertain no "question" about the matter, "serious" or otherwise. (Maj. opn., *ante*, at p. 134.)

In *Geiger*, we concluded that the instructional requirement as to lesser "related" offenses was *required* by the guaranty of due process of law. We did so because we were then of the view that such an obligation was necessary to ensure the defendant fundamental fairness when he found himself in the hands of the state. I no longer share that view. Because a standard implementing that mandate has not articulated itself, the mandate itself turns out to be formless and, as such, ineffectual.

In *Geiger*, we also addressed, and rejected, an argument made by the People, and urged by Justice Richardson, that the instructional requirement as to lesser "related" offenses was *prohibited* by the principle of separation of powers. We did so because we were then of the view that such an obligation would not cause the trial court's authority to trench on that of the prosecutor. I still share that view, for the following reasons.

Reasonably considered, the instructional requirement as to lesser "related" offenses does not even implicate the principle of separation of powers. The prosecutor's authority, as is manifest, expresses itself in the bringing of charges against the defendant. (See, e.g., *People* v. *Superior Court* (*Romero*) (1996)13 Cal.4th 497, 514 [53 Cal.Rptr.2d 789, 917 P.2d 628].) By contrast, the trial court's authority extends to their disposition. (See, e.g., *ibid.*) By instructing on a lesser "related" offense, the trial court does not encroach on the prosecutor's power *in form*. To give instructions—even instructions

subsequently held to be erroneous—belongs to the trial court, and to the trial court alone, going as it does to the disposition of charges. By instructing on a lesser "related" offense, neither does the trial court encroach on the prosecutor's power *in substance*. In this area, the prosecutor has an altogether legitimate complaint. Although, on the surface, his concern seems to be with the lesser "related" offense, at bottom it shows itself to relate to the offense charged: "By instructing on a lesser 'related' offense," he may be understood to argue, "the trial court erroneously invites the jury to find the defendant not guilty of the offense charged." That may perhaps be true. But, for present purposes, it is of no consequence. By giving *any* instruction that is over-favorable *in any way* to *any* defendant, the trial court, by definition, erroneously invites the jury to find the defendant not guilty of the offense charged. But simply by erring in this regard, it does not exceed its power. True, it may be deemed to *mis*use its authority to dispose of charges. It cannot be said, however, to *use* the prosecutor's authority to bring charges in the first place. The result is no different if, by instructing on a lesser "related" offense, it erroneously invites the jury to find the defendant not guilty of the offense charged. Here too, it may *mis*use its own authority, but does not *use* the prosecutor's.

In conclusion, and solely because the rule of *Geiger* has proved to be unworkable, I concur in the result.

**WERDEGAR, J.**—I concur in the majority opinion except insofar as it discusses the California constitutional doctrine of separation of powers. The discussion is unnecessary to the court's holding and, in keeping with the traditional rule that courts refrain from addressing constitutional questions unless required to resolve a given case (see *College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 721 [34 Cal.Rptr.2d 898, 882 P.2d 894]; *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; *People* v. *Bennett* (1998) 17 Cal.4th 373, 393 [70 Cal.Rptr.2d 850, 949 P.2d 947] (conc. opn. of Werdegar, J.)), I express no opinion on its correctness.

**BROWN, J.**—I fully concur in the determination, long overdue, to overrule *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] (*Geiger*) for all the reasons cogently articulated in the majority opinion. In addition to the deficiencies already noted, *Geiger* is flawed in other respects.

First, other than making a superficial comparison to the lesser included offense instruction rule, the *Geiger* court provided no real analysis for its conclusion that the state constitutional right to due process compelled a lesser related offense instruction rule. (See *Geiger, supra,* 35 Cal.3d at pp.

518-520.) Only two cases were cited, neither of which purported to define the scope of due process in a criminal proceeding. (See *Salas* v. *Cortez* (1979) 24 Cal.3d 22 [154 Cal.Rptr. 529, 593 P.2d 226] [indigent putative fathers entitled to appointment of counsel in paternity actions brought by the state]; *In re Roger S.* (1977) 19 Cal.3d 921 [141 Cal.Rptr. 298, 569 P.2d 1286] [14-year-old minor cannot be placed in mental hospital without due process determination of mental illness or disorder].) At best, these authorities stand for the generic proposition "that an individual may not be deprived of life, liberty or property without due process of law" (*Salas* v. *Cortez, supra*, 24 Cal.3d at pp. 26-27), hardly a self-executing principle in any context. Nor did the *Geiger* court attempt to explain why state due process should exceed federal due process; it simply made the implied finding ipse dixit. (Cf. *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 353 [276 Cal.Rptr. 326, 801 P.2d 1077].)

Second, without explanation the *Geiger* majority inverted "the almost invariable assumption of the law that jurors follow their instructions [citation], which we have applied in many varying contexts." (*Richardson* v. *Marsh* (1987) 481 U.S. 200, 206 [107 S.Ct. 1702, 1707, 95 L.Ed.2d 176], and cases cited therein; *People* v. *Harris* (1994) 9 Cal.4th 407, 426 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) The United States Supreme Court has recognized a "narrow exception" only when " 'the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored[, as] . . . where the powerfully incriminating extrajudicial statements of a codefendant . . . are deliberately spread before the jury in a joint trial. . . .' " (*Richardson* v. *Marsh, supra*, 481 U.S. at p. 207 [107 S.Ct. at p. 1707], quoting *Bruton* v. *United States* (1968) 391 U.S. 123, 135-136 [88 S.Ct. 1620, 1627-1628, 20 L.Ed.2d 476].) No comparable risk arises when the jury is properly instructed it must find all the elements of the charged offense beyond a reasonable doubt before adjudging the defendant guilty.

Finally, in a related vein, the *Geiger* majority's concern that the lack of instruction on lesser related offenses would compromise the "reliability of the fact finding process" was misplaced. (*Geiger, supra*, 35 Cal.3d at p. 520.) If the evidence is insufficient to establish the crime charged, the defendant may move the trial court for the entry of a judgment of acquittal. (Pen. Code, § 1118.1.) Indeed, the trial court may enter such a judgment on its own motion. (*Ibid.*) If both of these safeguards fail, and a jury convicts notwithstanding insufficiency of the evidence, the defendant can pursue the issue on direct appeal. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The court applies the

same standard regardless of when the issue is raised (see *People* v. *Blair* (1979) 25 Cal.3d 640, 666 [159 Cal.Rptr. 818, 602 P.2d 738]), and must determine that the evidence "is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt" before sending the matter to the jury or upholding the conviction. (*People* v. *Johnson*, *supra*, 26 Cal.3d at p. 578.) If the evidence meets this standard, the verdict is inherently reliable because the jury justifiably convicts the defendant. If it does not, any unreliability in the factfinding process is checked by the court.

In short, *Geiger* attempted to solve a nonexistent problem by imposing a requirement that was "not only unprecedented, but also unworkable." (*Hopkins* v. *Reeves* (1998) 524 U.S. 88, __ [118 S.Ct. 1895, 1901, 141 L.Ed.2d 76]; see maj. opn., *ante*, at p. 131 [citing more than a dozen examples of the confusion wrought by the *Geiger* rule].) In practice, *Geiger* probably did more to jeopardize the "reliability of the fact finding process" (*Geiger*, *supra*, 35 Cal.3d at p. 520) than to protect it. (*Id.* at p. 534 (dis. opn. of Richardson, J.) [predicting the *Geiger* rule would lead to "unsound compromise verdicts"]; see also *Hopkins* v. *Reeves*, *supra*, 524 U.S. at p. __ [118 S.Ct. at p. 1902] [requiring instructions on lesser related offenses " 'detracts from, rather than enhances, the rationality of the process.' [Citation.]"].)

Although I agree with the analysis and holding in this case, for the reasons stated in my dissenting opinion in *People* v. *Breverman* (1998) 19 Cal.4th 142, 195-202 [77 Cal.Rptr. 870, 960 P.2d 1094], I do not subscribe to those portions of the majority opinion discussing the trial court's sua sponte instructional obligations on lesser included offenses. (Maj. opn., *ante*, at pp. 112, 118-119.) In my view, this discussion is unnecessary to justify overruling *Geiger*. Its obsequies should be brief: good riddance.