[No. B007045. Second Dist., Div. Five. Apr. 18, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LOUIS BOYD, JR., Defendant and Appellant.

**COUNSEL**

Anita Susan Brenner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EAGLESON, J.**—Appellant was charged in an information with robbery, a violation of Penal Code section 211. The information further alleged that in the commission and attempted commission of the offense, he was armed with a firearm (handgun) within the meaning of Penal Code section 12022, subdivision (a), and that he personally used the firearm (handgun) within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1).

In an amendment to the information it was alleged that appellant had suffered one prior felony conviction in Texas within the meaning of Penal Code section 667.5, subdivision (b).

Appellant pleaded not guilty and denied all the other allegations. After a jury trial, he was found guilty of robbery. The use allegation was found to be true. The armed allegation was found to be not true[1] and in a court trial, the court found the allegations of the prior Texas felony conviction to be not true.

Appellant was sentenced to state prison for the upper term of five years and an additional two years for use of the handgun, for a total term of seven years.

He appeals from the judgment of conviction. We affirm.

## DISCUSSION

Appellant raises four points on appeal, all of which we find to be without merit.

First, he contends that the trial court erred in ruling that if appellant testified he could be impeached with his prior felony convictions.

Prior to trial, appellant made a motion to prevent the prosecution from impeaching him with a 1982 Texas burglary conviction of entering an inhabited dwelling with the intent to commit an aggravated assault.[2] The trial court denied the motion. Later it denied a second motion to exclude the Texas prior and a motion to exclude the Tennessee prior.[3]

---

[1]Defendant was tried with codefendant Byrd, whose matter ended in a mistrial.

[2]The 1982 Texas felony conviction was the prior felony alleged in the amended information. Later during the course of trial, the district attorney produced evidence of a 1974 Tennessee felony conviction for grand larceny.

[3]Here is the colloquy on the first motion:

"Ms. FALICK: The other issue is prior to jury selection I would like to make a motion asking the court to rule that if Mr. Boyd testifies that the District Attorney not be allowed to impeach him by asking him 'Isn't it true that in Texas on whatever day it was you were convicted of the crime of burglary, entry into a building with intent to committing aggravated assault,' which I guess I will call a Beagle motion if it's still called a Beagle motion. I would like to take that up at this time if it's all right with the court.

". . . . . . . . . . . . . . . . . . .

"MR. SORRENTINO: Your Honor, I believe that Proposition 8 has abrogated Beagle and any relevant evidence of a prior admission is not admissible under Proposition 8 and until the Supreme Court declares otherwise, that would be the People's position. I do think that a burglary does go to the issue of credibility and veracity anyway.

"THE COURT: This particular burglary was burglary of an inhabited dwelling with intent

Appellant testified in his own defense, and as a matter of trial tactics, his counsel asked him about both priors on direct examination.

---

to commit aggravated assault and intent to commit burglary.

"Ms. FALICK: And he pled guilty to burglary of an inhabited building and the aggravated assault.

"I agree with him under Proposition 8 all relevant evidence is admissible. The issue is whether or not, because it is an entry with intent to commit an assault it has any relevance on the issue of credibility. Proposition 8 says that the only time you can use a prior is for impeachment. And for impeachment, it means it has to have a bearing on whether or not the witness is truthful or not truthful.

"THE COURT: Why is that so?

"Ms. FALICK: That is my argument.

"THE COURT: Oh.

"Ms. FALICK: In other words, I don't think that it has any impact on a trier of fact's decision on whether to believe a witness or not to find out that they once entered a building with intent to assault somebody. If, of course, it was a crime of theft or dishonesty of any kind, clearly it would be relevant on the issue of credibility.

"THE COURT: Yes, but isn't it the case, Ms. Falick, that the Legislature, when they enacted the Evidence Code, by statute said a ground of impeachment of a witness is a conviction of any felony? And the same argument was made to the Legislature at the time the Evidence Code was adopted and they rejected it and decided that any felony is impeachment by statute.

"The Supreme Court subsequently, in *Beagle* and those other cases, disagreed with the legislative enactment and said that only those felonies that bear on the so-called character trait of honesty are admissible to impeach.

"The People, under Proposition 8, cancelled the Supreme Court's analysis and went back to what the Legislature had enacted, namely, that any felony by statute impeaches.

"Ms. FALICK: That is the issue, obviously. There is more than one case that has come down from the Court of Appeal which are all up before the Supreme Court on this issue. Some have gone the way that you are suggesting, that the interpretation that any felony, regardless of whether it has to do with dishonesty, is admissible for impeachment. And at least one case says just the opposite, that it's not relevant unless it has to do with honesty.

"THE COURT: Okay. You see the problem here is what is honesty. That's the real problem. I certainly agree that there are priors that are so remote in time that they are irrelevant, and of a kind of offense that they are irrelevant that I can easily understand. That makes good sense to me.

"If you are talking about like the case we just finished trying, a 10-year-old sawed-off shotgun, that is irrelevant to me when a man is charged with a robbery 10 years later without a gun, or at least without a shotgun.

"But I always personally had problems with the idea that the only offenses that bear on honesty are thefts.

"Ms. FALICK: Well, or perjury.

"THE COURT: Nobody has ever been convicted of perjury, nobody. Frankly, some of the most honest people in the world are the most perjured persons, I mean, consider our noble physicians testifying as experts for a fee.

"So, there is no precedent on this particular point. So, we are left adrift. And my problem is, you know, breaking in somebody's house to me, for whatever purpose, is dishonest. Whether you intend to steal his watch or kill his wife, you know, just doesn't make any difference to me. To say that breaking into a house at three o'clock in the morning for the purpose of raping a 12-year-old girl is not dishonest, but breaking into a house for the purpose of stealing a two-dollar bill is, it's just silly. I always thought it was silly and until the Supreme Court comes down otherwise, I am just not going to adopt that Rollo-type reasoning.

"Now, in this case you have a Texas conviction, and I make no comment as to the sufficiency of your showing of Boykin-Tahl waivers, but it's a September 23 conviction of an April 5th offense of burglary of inhabitation with intent to commit aggravated assault.

At the time this case was tried, appellant relied primarily on *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and its progeny, which severely limited the full and unrestricted use of prior felony convictions for purposes of impeachment. *Beagle* judicially created a discretionary approach to the use of these convictions (Evid. Code, § 352) and trial courts were mandated to consider in the exercise of discretion (1) whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; (3) whether it is suffered for the same or substantially similar conduct for which the witness-accused is on trial; and (4) what effect admission would have on a defendant's decision to testify.

---

And I think that is an admissible prior. So, your motion is denied."

Before the appellant testified, counsel and the trial court engaged in the following additional colloquy centering primarily on the Tennessee prior:

"Ms. FALICK: A couple things. I was about to call Mr. Boyd to the witness stand, but before I do, I have a couple of things. The District Attorney has just showed me a prior proof of a prior conviction of Mr. Boyd from Tennessee.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Ms. FALICK: In addition, he has now a Tennessee prior. It shows in 1974 he lost a jury trial and was convicted of grand larceny in Tennessee. And I want to make a *Beagle* motion as to that on the grounds of remoteness and also to renew my attack on the Texas one on constitutionality grounds.

"The Coffee case, which I cited in my written points and authorities, does say if the prior is constitutionally invalid because of no Boykin-Tahl waivers, it cannot be used for impeachment. So, I want to find out first of all are you going to let him impeach with the Tennessee, a grand larceny, 1974 case—he can show you the paperwork—and are you going to stick to the ruling you made prior to jury selection about letting him impeach with the aggravated assault from Texas in '82?

"THE COURT: What is the Tennessee situation?

"MR. SORRENTINO: The Tennessee situation—

"THE COURT: Let me see your papers.

"MR. SORRENTINO: Sure.

"(Pause.)

"THE COURT: All right, it is a certified copy of a minute entry of Shelby County Court in Tennessee, indicating the defendant was charged with robbery with a deadly weapon—

"Ms. FALICK: I think Boyd was convicted of grand larceny. Somebody else was convicted of something else.

"THE COURT: May I?

"—With two other defendants, and David L. Boyd was found guilty of grand larceny and the sentence was five to ten. That was on Wednesday, October 16, 1974.

"Now what is your argument about?

"Ms. FALICK: I want to know if Mr. Boyd takes the witness stand are you going to allow him to be impeached with that Tennessee conviction from '74?

"THE COURT: Yes.

"Ms. FALICK: I am going to put on the record as a matter of trial tactics I am going to ask him about the priors first, since you are saying the D.A. would be allowed to ask him about both priors.

"THE COURT: The Tennessee prior is not remote in view of the Texas prior. If he had nothing between '74 and 1984, your argument of remoteness would have been valid. But he has got another felony conviction in 1982, some eight years later, when he was sentenced from five to ten. I don't know how long he may have served, but it says 'Not less than five.'

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . So, the ruling is both priors are available for impeachment."

The People argued, in what they characterized as the plain meaning and intent of Proposition 8, that all prior felony convictions are admissible for impeachment without limitation.[4]

 In an opinion filed March 11, 1985, the Supreme Court in *People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d. 111] laid this issue to rest in these four sentences:

(1) "[S]ection 28 was not intended to abrogate the traditional and inherent power of the trial court to control the admission of evidence by the exercise of discretion to exclude marginally relevant but prejudicial matter—as, indeed, is provided by Evidence Code section 352." (*Id.*, at p. 306.)

(2) "We . . . hold that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*Id.*, at p. 306.)

(3) "The classic statement of the rationale for felony impeachment is that of Justice Holmes, written when he was still a member of the Supreme Judicial Council of Massachusetts: '[W]hen it is proved that a witness has been convicted of crime, the only ground for disbelieving him which such proof affords is the *general readiness to do evil* which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in a particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of *bad character* and unworthy of credit.' " (*Id.*, at p. 314; italics in original; citation omitted.)

(4) "It follows, therefore, that if the felony of which the witness has been convicted does not show a 'readiness to do evil,' the fact of conviction simply will not support an inference of readiness to lie. We make no attempt to list or even further define such felonies." (*Id.*, at p. 314.)

 Analysis of the colloquy between the court and counsel discloses that the trial judge engaged in the weighing process that is contemplated by

---

[4]On June 8, 1982, the California electorate enacted Proposition 8, adding in part section 28, subdivision (f) to article I of the California Constitution to provide: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." This section is applicable to the case at bench since the robbery allegedly occurred on January 12, 1984.

Evidence Code section 352.[5] Judicial analysis preceded the exercise of judicial discretion. Although initially impressed by the People's argument that under Proposition 8 any prior felony conviction can be used for impeachment without limitation, the court launched into a consideration of the nature of the Texas felony when it said, "You see the problem here is what is honesty." The court postulated that, "[B]reaking in somebody's house to me, for whatever purpose, is dishonest. Whether you intend to steal his watch or kill his wife, you know, just doesn't make any difference to me. To say that breaking into a house at three o'clock in the morning for the purpose of raping a 12-year-old girl is not dishonest, but breaking into a house for the purpose of stealing a two-dollar bill is, is just silly." *People v. Lassell* (1980) 108 Cal.App.3d 720 [166 Cal.Rptr. 678] holds that a conviction for burglary is probative on the issue of credibility and admissible for impeachment purposes. (See also *People v. Castro, supra,* 38 Cal.3d at p. 315, fn. 10.)

In discussing the Tennessee conviction, all parties proceeded on the assumption that the conviction was highly probative because it involved dishonesty. However, the issue of remoteness of the Tennessee felony was seriously contested by appellant. The court reasoned from documents in its possession that this 1974 conviction was not remote because of its closeness to the 1982 Texas prior. The court commented that appellant was sentenced to "not less than five years" in state prison in Tennessee.

■ The remoteness consideration mandated by *Beagle* was predicated on the proposition that even as to felonies clearly involving dishonest conduct, "if it occurred long before and has been followed by a legally blameless life, [it] should generally be excluded on the ground of remoteness." (*People v. Beagle, supra,* 6 Cal.3d at p. 453.) The trial court properly concluded that a long period of incarceration, with its concomitant restriction on possible criminal conduct, should not be considered in assessing the length of the "legally blameless life" of the appellant. The issue of remoteness was not raised with respect to the Texas prior because it had been suffered only about two years prior to the trial of the case at bench.

■ The court was also advised by defense counsel that notwithstanding its rulings to allow the felony priors to be admitted for purposes of impeachment, the appellant would still take the stand, which he did.

Although not discussed, it was readily apparent to the trial court and the parties that the crime of robbery for which appellant was on trial was not

---

[5]In both motions, defense counsel said she was making a *Beagle* motion. However, she limited her argument concerning the Texas prior to whether the "burglary" conviction reflected on truth and honesty, and in the Tennessee prior to the issue of remoteness.

substantially similar to the crimes of burglary and grand larceny for which he had been previously convicted. Grand larceny is a classical crime of dishonesty; burglary is a crime involving furtivity and stealth,[6] while robbery is the wrongful taking of personal property from the possession of another against his will accomplished by means of force or fear. Their dissimilarities, in a *Beagle* context, are clear, and quite understandably would not be the subject of discussion between knowledgeable counsel and an experienced trial court.

We do not read *Castro* as imposing any new elements into a section 352 analysis. *Castro* broadens and expands the list of impeachment crimes under *Beagle* from those that reflect on honesty and integrity to additionally include those that necessarily involve "moral turpitude," which is further defined to mean "readiness to do evil."

Under *Castro,* we hold that the prior felony convictions of grand larceny and burglary of an inhabited dwelling with intent to commit aggravated assault both manifest a "readiness to do evil" and are admissible for purposes of impeachment.

The trial court did not here recite the magic words that its decision was based on "352" nor did it intone that the probative value of the evidence, if admitted, was not outweighed by creating substantial danger of undue prejudice, or comments of similar import. The important point is, and we so find, that the court made apparent on the record that prior to exercising its discretion it did, in fact, weigh prejudice against probative value, using a *Beagle* analysis. (*People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].)

Appellant next asserts that the court erred by refusing the defense request to instruct on certain requested lesser related offenses.

The only charge filed against appellant was robbery. The People's evidence showed that appellant robbed Ms. Sherouse of her jewelry by using a gun. He testified in his own behalf and claimed he did not rob her, and denied using a gun. His explanation was that he gave Ms. Sherouse $100 to purchase cocaine for him. She never bought the cocaine. When he saw her later she offered him her jewelry as collateral for the cocaine or return of the money.

Against this factual background, appellant's counsel requested instructions on allegedly lesser related offenses of attempted possession of cocaine,

---

[6](*People* v. *Castro, supra,* 38 Cal.3d at p. 315, fn. 10.)

exhibiting a firearm in violation of Penal Code section 417, assault with a deadly weapon in violation of Penal Code section 245, and a "claim of right" defense.[7] The court properly refused these requests.

■ The lesser related offense doctrine became law in California following the decision of our Supreme Court in *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303] where it was held that a trial court must in appropriate circumstances, and upon the request of the defendant, instruct on lesser related offenses. In discussing this issue, the court stated: "Therefore, the first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged.

---

[7]In requesting instructions on lesser related offenses, the following colloquy occurred:

"[THE COURT]: All right, now, you are requesting lessers. You are requesting attempted possession of cocaine.

"Ms. FALICK: This is not a lesser included of robbery, but it is factually related to the case. I think there is a confusion. That is what Mr. Boyd [appellant] is guilty of and I think it should be given.

". . . . . . . . . . . . . . . . . .

"THE COURT: All right. That is all refused.

"Ms. FALICK: What about any other lessers?

"THE COURT: Exhibiting a firearm?

"Ms. FALICK: If the jury does not believe him when he said he didn't have a gun, what if they believe he had a gun but they believe he pulled it out because he was trying to make Sherouse give him back his money or his coke or give him the jewelry as collateral.

"THE COURT: The money, he said the guy left with, and the coke, he said she didn't have any of.

"Ms. FALICK: Right. If they don't believe him when he said he didn't have a gun, but that he did that in order to get some satisfaction for what he was being cheated out of, if they believe he pointed the gun that was loaded, it would be a 245, but not a robbery. And if they believe he was displaying it, it could be a 417 and not a robbery. And that is why I asked for both of the lesser offenses, which should be given in light of the testimony.

"THE COURT: Refused.

"I will hear your argument on 245.

"Ms. FALICK: I just made it.

"THE COURT: Okay, refused.

"Ms. FALICK: That is my claim of right defense and I think that is appropriate.

"THE COURT: All right. Refused.

"Ms. FALICK: You are refusing that?

"THE COURT: Where do you have any claim of right?

"Ms. FALICK: Well, if she took his money and didn't give him back his cocaine, he could have taken the jewelry because he thought he had a claim of right.

"THE COURT: He didn't take the jewelry. He testified she gave it to him, she gave it to him, he said. She took it off and gave it to him to hold as security. That was his testimony. Unless you want the jury to make up their own version, which perhaps they might want to do in view of the versions that they were given.

"Ms. FALICK: Nobody told us the truth is what I think may have happened here and he may well be guilty of one of those other crimes, but not robbery.

"THE COURT: Well, then, he should be acquitted because he is not charged with any of the others."

"Second, the offense must be one *closely related* to that charged *and shown by the evidence*. The District of Columbia Circuit and the courts adopting the *Whitaker* approach have limited instructions to those on offenses having an 'inherent relationship' with the charged offense in order to prevent 'abuse' by defendants seeking to appeal to the jury's sense of mercy by requesting instructions on every offense that is arguably shown by the evidence. We agree that the right to instructions on related offenses is not without limit. The purpose of the rule, however, serves to define its limits. The right to instructions on related offenses exists only to enable the jury to *determine fairly the issues presented by the evidence* and in so doing to avoid any incentive to convict the defendant of a greater offense than that which he committed. The issues presented by the evidence are those related first to the defendant's guilt or innocence of the charged offense. Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense.

"Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. *Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability* as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense." (*Id.,* at pp. 531-532; italics added.)

 Attempted possession of cocaine is not closely related to the charge of armed robbery. The societal interest in proscribing robbery—security of personal property from a felonious taking—has no relationship to the societal interest in proscribing the possession of narcotics—elimination of a dangerous substance the use of which represents a serious risk to the health and welfare of the appellant and perhaps others who might come into unlawful possession thereof.

Likewise, the societal interest to be protected by proscribing an assault with a deadly weapon (Pen. Code, § 245) or exhibiting a firearm (Pen. Code, § 417) is security of the person, not security of personal property from a felonious taking, which underlies robbery. These crimes are not closely related.

Even more significant is the fact that appellant testified that he did not rob the victim, or use a gun. This testimony completely undermines his argument that if the jury did not believe him when he said he did not have

a gun in his possession, they could believe that his possession thereof amounted only to an assault with a deadly weapon or exhibiting a firearm in an effort to gain back his money, the cocaine, or the jewelry as collateral for the return of either.

The victim and appellant both testified that the victim never bought the cocaine or brought it into his immediate presence so that there could be no attempt to possess same nor could there be an effort to exercise a claim of right thereto. Instructions under Penal Code sections 245 and 417 would be contradictory to appellant's statement he did not use a gun. *Geiger* holds that the requested instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Appellant's denial of robbery, or use of a gun, are completely inconsistent with him having possession of same. Finally, the appellant testified that the victim voluntarily gave him her jewelry. If this be the case, there would be no need for him to use a handgun to gain possession thereof.

■ Appellant continues his attack on the judgment of conviction by alleging that the prosecutor improperly exercised some of his peremptory challenges to excuse three prospective black jurors.

■ In *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], the California Supreme Court held that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury from a representative cross section of the community. If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must make a prima facie case of such discrimination to the satisfaction of the court. "[H]e must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Id.,* at p. 280.) "[T]he court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone. . . . [¶] If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone." (*Id.,* at p. 281.)

■ During the course of the voir dire proceedings, appellant twice moved for a mistrial on *Wheeler* grounds. Both motions were denied.

At the point in time when the first motion was made, the defense counsel stated: "I notice that there have only been three people that appear to be black that have been in the jury box since we started. . . . Of those three,

there is only one left. And the other two have been excused, both by the District Attorney. And there is nobody else other than that that appears to be black that is up there now other than Juror No. 12."

On the second motion, the defense counsel noted for the record: "The last person that was excused by the District Attorney is the third black person that has been excused from this jury. There is still just one black person up there and there aren't too many in the audience. I make another *Wheeler* motion for mistrial."

When appellant first moved for a mistrial, the prosecution had just excused Mrs. Solomon, a black.[8] At that point there was only one black juror remaining and the prosecutor had previously excused one other black juror. However, before Mrs. Solomon was excused, the prosecutor had accepted the jury as constituted and at that time there were two black jurors. Also, the prosecutor had several remaining peremptory challenges when he accepted the jury at that time. The record at that time did not reflect a prima facie showing of group bias.

When appellant again moved for a mistrial on *Wheeler* grounds after the prosecution's dismissal of Mr. Kidd, a black, there was no prima facie showing that the prosecutor was excusing Mr. Kidd on the basis of group bias alone. After excusing Mrs. Solomon, and prior to excusing Mr. Kidd, the prosecutor again twice accepted the jury as presently constituted and at that time there were two black jurors on the jury. Ultimately two black jurors were seated on the panel that tried the case.

After the jury and alternates were sworn, the trial court summed up its impressions on the *Wheeler* issue.[9]

---

[8] There is some confusion in the record concerning the name of this black female juror. Respondent refers to her as "Mrs. Appleton," while appellant and the trial court call her "Mrs. Solomon." For clarity's sake, we will use the name Solomon.

[9] "THE COURT: I wanted to go on the record on the matter of the rulings on your Wheeler motions. During the course of the proceeding, five black persons were called into the box. The People excused three. There are two remaining, they are jurors No. 12 and 9.

"Of the three blacks that were excused, Mr. Gilmore, in my opinion, was not very alert mentally and I can't criticize his excuse. Mrs. Harris—not Harris, Mrs. Kidd was excused from seat No. 3. She said she had an older son that had been in several difficulties with the law and she gave me an impression of not being very concerned about the whole thing, having a rather laissez faire attitude about the whole thing. Mrs. Solomon is an unwed mother who hopes to get married at the end of the year. She is pregnant at this time and she is quite young and likewise did not give me the impression that she was particularly concerned about the proceedings.

"In short, I think that the People had what appeared to me to be very good cause to exercise peremptory challenges on these three individuals.

"I might comment there was an unusually small percentage of Negro people in this case and of Latin and Asian extraction. It's the luck of the draw, just one of those things.

"I denied your motions for those reasons. I thought I would wait until the end of the proceedings to put them on the record."

From the totality of circumstances, it is clear that defense counsel had not made out a prima facie case at any time that the district attorney was using his peremptory challenges to strike jurors on the ground of group bias alone so as to shift the burden of explanation to the prosecutor, and by its comments and its conduct, the trial court so concluded.

■ As noted in *People* v. *Wheeler, supra,* 22 Cal.3d at page 281: "Upon presentation of . . . evidence—. . . the court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone. We recognize that such a ruling 'requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of local prosecutors.' [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim interposed simply for purposes of harassment or delay."

■ Lastly, appellant contends that the trial court deprived him of the opportunity to present a witness by suggesting that the prospective testimony of this witness would be irrelevant.

Near the end of the defense case, appellant's counsel discovered a potential witness in the lockup.[10] Appellant argues that the court erred in deter-

---

[10]"Ms. FALICK: Thank you, your Honor.

"The only other matter I have to bring up is I found a witness in the lockup this morning that I was unaware of before this. He is in custody out of Department 111 on probation violation, and—

" . . . . . . . . . . . . . . . . . . .

"THE COURT: You found a witness in the lockup?

"Ms. FALICK: I went into the lockup to talk to Mr. Boyd and this fellow told me that he lives in the area.

"THE COURT: Why are you telling me these things? *If you have a witness, call him.* (Italics added.)

"Ms. FALICK: Well, the problem is that he says he was ripped off by a short, slim girl with brown hair and brown eyes and light-skinned on a marijuana sale in March of '84. And I am not sure that I can call him because unless I have a picture of the girl that is involved here or I can get the girl back so I can know if it's the same girl or a different girl—

"COURT: What difference does it make?

"Ms. FALICK: If it was the same girl, it might be relevant to show this current case was as Mr. Boyd was about to testify, a drug ripoff.

"THE COURT: I can't imagine how.

"Ms. FALICK: I would like the district attorney to get the girl back or get a picture of her.

"THE COURT: Denied.

"Ms. FALICK: Are you saying if I call this witness he would not be relevant.

"THE COURT: I can't imagine how he could be."

mining that such testimony was irrelevant. The record belies this assertion. The trial court specifically invited defense counsel to call the witness to the stand. Defense counsel demurred, requesting the court to order the district attorney to get the girl (Ms. Sherouse) back or get a picture of her. Proper investigation and the subpoenaing of witnesses is the sole responsibility of the party proffering the evidence.

The statements of counsel did not rise to the level of an offer of proof. The potential witness was not under subpoena and counsel did not know what he would say, if anything. The entire discussion was supposititious and the court was of the opinion that if that is all there was to this possible testimony, it would be irrelevant. We agree.

## DISPOSITION

The judgment of conviction is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied May 10, 1985.