OPINION
W. FLETCHER, Circuit Judge:
Petitioner-Appellant Constantino Carr-era was found guilty in 1983 of first-degree murder of two people during a robbery. Carrera is Hispanic. The victims were white. During voir dire, the prosecutor peremptorily challenged 75 percent of the Hispanie-surnamed venirepersons. By contrast, he peremptorily challenged only 26 percent of the white, non-Hispanic-surnamed venirepersons. At the time of Carrera’s trial, People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (Cal.1978), which held the use of peremptory challenges to strike venirepersons based solely on race to be a violation of the California Constitution, had been the law in California for five years. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), had not yet been decided. Carrera’s counsel did not object under Wheeler to the prosecutor’s peremptory challenges.
Carrera contends on habeas that his counsel’s failure to make a Wheeler objection was ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We affirm the district court’s denial of relief, holding that Carrera has not satisfied the prejudice prong of Strickland.[1]
I. Background
Carrera and another person were convicted in separate trials in Kern County *1106 Superior Court in California for killing a white couple during a robbery. See Carrera v. Ayers, No. 1:90-CV-00478-AWI, 2008 WL 681842, at *1 (E.D.Cal. Mar. 11, 2008). The other person, then seventeen years old, was statutorily ineligible for the death penalty and was sentenced to fifty years to life. Id. at *2 n. 3. Carrera, twenty years old at the time of the crime, was convicted of first-degree murder with special circumstances and was sentenced to death.
The California Supreme Court affirmed Carrera’s conviction and death sentence on direct appeal. People v. Carrera, 49 Cal.3d 291, 261 Cal.Rptr. 348, 777 P.2d 121 (1989). The court held that there had been multiple errors at trial, including an instructional error relating to Carrera’s intent to kill, but that the errors were all harmless. See id. at 309-11, 261 Cal.Rptr. 348, 777 P.2d 121. Carrera filed his federal habeas petition in 1990, before the effective date of the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”). See Robinson v. Schriro, 595 F.3d 1086, 1099 (9th Cir.2010).
The federal district court set aside Carr-era’s death sentence. The court found repeated instances of prosecutorial misconduct during trial: The prosecutor failed to correct testimony he knew was perjurious; he concealed inducements to two testifying jailhouse snitches; and he presented flatly inconsistent factual narratives at the separate trials of Carrera and his co-perpetrator. The court concluded that an intent-to-kill instructional error was not harmless because its application was tainted by prosecutorial misconduct.
The district court subsequently denied Carrera’s guilt-phase claims. One of those was a claim that his trial counsel had provided ineffective assistance in failing to make a Wheeler objection. Carrera appealed.
II. Jurisdiction and Standard of Review
We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. “We review the district court’s denial of [Carr-era’s] habeas petition de novo, and the district court’s findings of fact for clear error.” Robinson, 595 F.3d at 1099. Because Carrera filed his federal habeas petition before the effective date of the AED-PA, we consider it under the pre-AEDPA standard of review. Id. Ineffective assistance of counsel claims present mixed questions of law and fact. Id. “Under preAEDPA law, we owe no deference to the state court’s resolution of questions of law or mixed questions of law and fact.” Id. “We review the district court’s findings of fact for clear error.” Id.
III. Discussion
A. Voir Dire
Prior to voir dire, when the racial and ethnic composition of the venire panel was still unknown, Carrera’s counsel moved to quash the venire on the ground that there were insufficient procedures in place to ensure a panel that reflected the ethnic and racial diversity of Kern County. See People v. Buford, 132 Cal.App.3d 288, 182 Cal.Rptr. 904, 905 (1982) (addressing a jury challenge “on the ground that blacks were underrepresented on that jury and on other juries in [the] County as a result of systematic exclusion in the jury-selection process” (footnote omitted)). When the venire panel was chosen, it turned out that between eleven and fourteen members of the panel had Hispanic surnames, and at least four members were black. Carrera’s counsel withdrew her motion to quash.
During voir dire, the prosecutor and Carrera’s defense counsel both asked questions directed to ethnicity. The pros *1107 ecutor asked Hispanie-surnamed venirepersons if the fact that the defendant was of “Spanish descent” would affect their decision-making. Carrera’s counsel also asked questions directed to ethnicity. For example, she asked venireperson Martinez:
If you were chosen as a juror in this case and you were the only one that had a Spanish surname sitting on the panel, would you feel that you would be under an undue hardship, so to speak, for want of a better word, feeling you would have to vote just as everyone else did simply because they might claim because you have got a Spanish surname maybe you were being more lenient or that sort of thing?
The prosecutor exercised peremptory challenges to 75 percent of the venirepersons with Hispanic surnames. Of eight prospective jurors with Hispanic surnames, the State exercised peremptory challenges to six; the other two were seated on the jury. An additional person with a Hispanic surname was seated as an alternate. By contrast, the prosecutor exercised peremptory challenges against 26 percent (eleven of forty-one) white, non-Hispanic-surnamed prospective jurors. Five years earlier, the California Supreme Court had held that “the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution.” Wheeler, 22 Cal.3d at 276-77, 148 Cal.Rptr. 890, 583 P.2d 748. Carrera’s counsel made no objection under Wheeler to the prosecutor’s use of peremptory challenges to Hispaniesurnamed venirepersons.
B. Ineffective Assistance of Counsel Claim
Carrera contends that his trial counsel’s failure to make a Wheeler objection was ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. To establish ineffective assistance of counsel under Strickland, a defendant must show both deficient performance and prejudice. Because we conclude that Carrera has not carried his burden of proof to show prejudice, we need not decide whether he has shown deficient performance.
“[A]ny deficiencies in counsel’s performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.” Strickland, 466 U.S. at 692, 104 S.Ct. 2052. “The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052 (emphasis added). The petitioner has “the burden of showing that the decision reached would reasonably likely have been different absent the errors.” Id. at 696, 104 S.Ct. 2052.
The first step in a Wheeler objection was to show a prima facie case of unlawful discrimination. “If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court.” Wheeler, 22 Cal.3d at 280, 148 Cal.Rptr. 890, 583 P.2d 748. A prima facie case under Wheeler had three elements:
First ... [the party] should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances *1108 of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.
Id. (emphasis added) (footnote omitted). “If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone.” Id. at 281, 148 Cal.Rptr. 890, 583 P.2d 748 (footnote omitted).
Because we are evaluating the likelihood of success of Carrera’s hypothetical Wheeler objection in the context of an ineffective assistance claim, he has the burden to show under Strickland a reasonable probability he would have prevailed on a Wheeler claim. For the reasons that follow, we conclude that he has not carried his burden under Strickland.
1. Prejudice at Trial
The record shows that the prosecutor exercised peremptory strikes against six venirepersons with Hispanic surnames. Carrera concedes that one of the six — his counsel’s mail carrier — was properly struck. The record suggests obvious nondiscriminatory reasons for four of the five remaining strikes. One prospective juror, Petra Celedón, appeared bitter about being called to jury service. A second prospective juror, Alice Hernandez, worked at the juvenile detention facility where Carr-era’s co-defendant was held. A third prospective juror, Maria Carrillo, had a son who had a criminal record. A fourth prospective juror, Mary Garcia, told the court at the beginning of her voir dire that she could not impose the death penalty, though she later said that she could do so.
Only one of the prosecutor’s peremptory challenges was problematic. Prospective juror Lawrence Martinez unequivocally expressed his ability to impose the death penalty if, in his judgment, the circumstances warranted it. When asked if he had “family ... involved in any type of charges or a trial,” Martinez responded that a friend had had a drunk driving charge but mentioned no family members. He had no connection to the victims, defendants, or witnesses.
The record reveals no obvious non-discriminatory reason to challenge Martinez. But Wheeler required a stronger showing to establish a prima facie case. Not only were five of the six challenges to Hispanicsurnamed venirepersons relatively unproblematic; further, two Hispanic-surnamed persons were seated on the jury, and one Hispanic-surnamed person was seated as an alternate. Two California Court of Appeal cases, decided shortly after Carrera’s trial, highlight how difficult it would have been for Carrera to establish a prima facie case in these circumstances.
In People v. Boyd, 167 Cal.App.3d 36, 212 Cal.Rptr. 873, 880-82 (1985), a Court of Appeal held that, despite the prosecutor’s peremptory challenges to three black venirepersons, no prima facie case had been established under Wheeler because two black jurors were seated on the jury. In People v. Davis, 189 Cal.App.3d 1177, 234 Cal.Rptr. 859, 866 (1987), the prosecutor peremptorily challenged six black venirepersons, but allowed three black jurors to be seated. The court wrote: *1109 Id. at 869. The California Supreme Court overruled Boyd and Davis, but not until four years after Carrera’s trial. See People v. Snow, 44 Cal.3d 216, 225-26, 242 Cal.Rptr. 477, 746 P.2d 452 (1987).
*1108 [T]he presence of two and then three members of the cognizable group in the jury box at all times afforded the defendant a representative cross-section of the community and afforded equal protection to all, the defendant, the prospective jurors excused and the community at large. There was no prima facie case of exclusion for group bias demonstrated at any time.
*1109 2. Prejudice on Appeal
Carrera can also demonstrate prejudice by showing that a Wheeler objection would have succeeded on direct appeal. His counsel’s failure to make a Wheeler objection at trial was a procedural default under state law that prevented him from making a Wheeler challenge on appeal. See Carrera, 49 Cal.3d at 331 n. 29, 261 Cal.Rptr. 348, 777 P.2d 121 (Cal.1989) (noting “[t]he requirement that a contemporaneous motion be made to object to a prosecutor’s use of peremptory challenges to exclude prospective jurors of one racial group”); Wheeler, 22 Cal.3d at 284 n. 32, 148 Cal.Rptr. 890, 583 P.2d 748 (“[P]eremptories [were] not ‘open to examination’ unless and until on a timely motion the trial court is satisfied there is a prima facie showing that jurors are being challenged on the sole ground of group bias.”).
If Carrera’s counsel had made a Wheeler objection at trial, that objection would have been preserved for appellate review. In some circumstances, the failure to make an objection results in an undeveloped record, such that it is difficult or impossible to know what rulings would have resulted on appeal had a proper record been developed. Here, however, there is no such difficulty, for the record at trial was sufficiently developed to permit a meaningful evaluation of a prima facie case under Wheeler.
We must determine whether Carrera was prejudiced on appeal based on the law as it existed when his conviction became final on direct appeal. His conviction became final on April 23, 1990, when the United States Supreme Court denied certiorari. See Carrera v. California, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).
While Carrera’s case was pending on appeal, there were two significant changes in the law. First, in 1987 the California Supreme Court overruled Boyd and Davis. The court held in Snow that the presence of group members on a jury does not, by itself, prevent a defendant from making a prima facie case under Wheeler. It wrote, “[W]e disapprove language in People v. Davis suggesting that the presence of two or three Blacks in the jury box following voir dire precludes the trial court from finding a prima facie case of exclusion.” Snow, 44 Cal.3d at 225-26, 242 Cal.Rptr. 477, 746 P.2d 452 (citation omitted). After Snow, California courts were required to review all the circumstances surrounding voir dire to determine whether an objecting party had established a prima facie case of discrimination under Wheeler.
In People v. Allen, 212 Cal.App.3d 306, 260 Cal.Rptr. 463, 469 (1989), a Court of Appeal noted that “the exclusion of disproportionate numbers of minority jurors per se” does not automatically establish a prima facie case of discrimination under Wheeler. “[T]he law is clear that a prima facie case of group bias requiring prosecutorial explanation arises only if from all the circumstances of the case the trial court finds a strong likelihood that the persons were being challenged because of their group association rather than specific bias.” Id. (emphasis in original). Relevant circumstances included the extent the prosecutor questioned the jurors struck on peremptory challenges. People v. Trevino, 39 Cal.3d 667, 688, 217 Cal.Rptr. 652, 704 P.2d 719 (1985) (“The district attorney exercised peremptory challenges to remove six Hispanics from the jury after asking them few if any questions on voir dire.”), disapproved on other grounds by *1110 People v. Johnson, 47 Cal.3d 1194, 1219-20, 255 Cal.Rptr. 569, 767 P.2d 1047 (1989); People v. Allen, 23 Cal.3d 286, 294, 152 Cal.Rptr. 454, 590 P.2d 30 (1979) (noting as one of four factors of defendant’s prima facie case “that the district attorney had excluded many black persons after engaging in no more than desultory voir dire” (internal quotation marks and citation omitted)); People v. Moss, 188 Cal.App.3d 268, 233 Cal.Rptr. 153, 157-58 (1986) (“Although the prosecutor questioned [one of the two black jurors] extensively on voir dire ..., he asked no questions at all of [the other black juror].”). Other relevant circumstances included the common characteristics other than race among the venirepersons, see People v. Turner, 42 Cal.3d 711, 719, 230 Cal.Rptr. 656, 726 P.2d 102 (1986); Trevino, 39 Cal.3d at 688, 217 Cal.Rptr. 652, 704 P.2d 719; Allen, 23 Cal.3d at 293-95, 152 Cal.Rptr. 454, 590 P.2d at 34-35; Moss, 233 Cal.Rptr. at 157-58, as well as indications of specific bias apparent in the record, see, e.g., Turner, 42 Cal.3d at 719-20, 230 Cal.Rptr. 656, 726 P.2d 102; Allen, 260 Cal.Rptr. at 468-69.
Second, in 1986 the United States Supreme Court held in Batson v. Kentucky that racially discriminatory peremptory challenges violate the Equal Protection Clause of the Fourteenth Amendment. Batson applied retroactively to all cases then pending on direct review. See Griffith v. Kentucky, 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). A prima facie case under Wheeler required the objecting party to “show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.” Wheeler, 22 Cal.3d at 280, 148 Cal.Rptr. 890, 583 P.2d 748 (emphasis added). A prima facie case under Batson requires only that the objecting party show “that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Batson, 476 U.S. at 93-94, 106 S.Ct. 1712 (emphasis added).
In 2003, the California Supreme Court concluded that the Wheeler and Batson standards for making out a prima facie case were the same, and that Wheeler’s “strong likelihood of discrimination” continued to be the governing standard. See People v. Johnson, 30 Cal.4th 1302, 1313-14, 1 Cal.Rptr.3d 1, 71 P.3d 270 (2003). Two years later, the United States Supreme Court disagreed with the California Supreme Court, holding that the Wheeler and Batson standards are different, and that the less demanding Batson standard controls. Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005).
We must evaluate Carrera’s ineffective assistance claim under the law the California Supreme Court would have applied on direct appeal in 1990. When Carrera’s appeal was decided, the United States Supreme Court’s decision in Johnson was still fifteen years in the future. We therefore apply Wheeler’s “strong likelihood” standard, rather than Batson’s “raise an inference” standard, in determining whether Carrera would have been able to establish a prima facie case in the California Supreme Court on appeal.
A California appellate court deciding a Wheeler objection in 1990 would have examined the record not merely for evidence of group bias but also for evidence of specific bias against individual venirepersons. See, e.g., Turner, 42 Cal.3d at 719, 230 Cal.Rptr. 656, 726 P.2d 102; Allen, 260 Cal.Rptr. at 468-69. Carrera argues that the prosecutor’s six peremptory strikes of Hispanic-surnamed venirepersons would have been enough to establish a prima facie case of specific bias under Wheeler. We have already summarized the evidence with respect to those strikes. We con- *1111 elude that the absence of an obvious nondiscriminatory reason with respect to one prospective juror out of six would not have been enough to enable Carrera to establish a prima facie case. Not only was the evidence of specific bias against venireperson Martinez relatively weak; further two Hispanic-surnamed venirepersons were seated on the jury and one was seated as an alternate. In Snow, the California Supreme Court had held that the presence of group members on the jury was not, by itself, sufficient to defeat a prima facie case of discrimination under Wheeler, but their presence continued to be relevant to a determination whether, under all the circumstances, a prima facie case had been established.
Carrera argues further that a prima facie case of group bias can be shown “because the prosecutor questioned minority jurors differently than white jurors.... ” The prosecutor engaged in far more than a “desultory voir dire” with the struck jurors. Cf. Allen, 23 Cal.3d at 294, 152 Cal.Rptr. 454, 590 P.2d 30. It is true that the prosecutor asked Hispanic-surnamed venirepersons whether the fact that the defendant was “of Spanish descent” would affect their deliberations, and that he did not ask potential white jurors similar ethnicity-based questions. However, asking questions about potential bias is the purpose of voir dire. Indeed, as we noted above, Carrera’s counsel also asked ethnicity-based questions of the Hispanic-surnamed venirepersons.
Were we reviewing the prosecutor’s actions in a different procedural posture or under current law, we might well reach a different conclusion. But evaluating an ineffective assistance of counsel claim on the record before us, under Wheeler as it was interpreted in 1990, we cannot say Carrera has carried his burden of proof to show that he was prejudiced by his counsel’s failure to object to the prosecutor’s peremptory strikes. Carrera has not shown a “reasonable probability” that on direct review, he would have succeeded under Wheeler in showing “a strong likelihood” that challenges to Hispanic-surnamed venirepersons were made “because of their group association.”
Conclusion
Because Carrera is unable to establish that his trial counsel’s failure to make a Wheeler motion was prejudicial, he has not established an ineffective assistance of counsel claim under Strickland. We therefore affirm the district court.
AFFIRMED.

. We address in this opinion only Carrera’s Wheeler-based Strickland claim. We address his other claims in an unpublished memorandum filed simultaneously with this opinion.