PREGERSON, Circuit Judge,
dissenting:
A fair trial requires the selection of a fair jury. That didn’t happen in Constantino Carrera’s case because his defense counsel was incompetent.
Michael Vedrasco, the prosecutor in defendant Carrera’s case, struck seventy-five percent of potential Hispanic jurors, but only twenty-six percent of potential white jurors. Carrera’s defense attorney, Donnalee Huffman,[1] failed to object. The majority concludes that attorney Huffman’s failure to object to the prosecutor’s striking of prospective Hispanic jurors did not amount to ineffective assistance of counsel. I disagree.
Both the United States Constitution and the California Constitution guarantee a defendant in a criminal case a fair and impartial jury. U.S. Const. amend. VI; Cal. Const., art. I, § 16. In People v. Wheeler, the California Supreme Court established that racial bias in jury selection violates *1112 this constitutional guarantee. People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 755 (1978). To support a Wheeler motion, the defense attorney must “show a strong likelihood” that the prosecutor struck prospective jurors because of their “group association.” Id. at 764. Once the defense attorney presents such evidence, “the court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone.” Id. (emphasis added).
The majority opinion only cites Wheeler’s “strong likelihood” standard and ignores its, “reasonable inference” standard. See Maj. op. at 1110. Under California’s evidence laws, however, both standards mean a preponderance of the evidence. Cal. Evid.Code § 115 (“Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.”). While the majority opinion distinguishes the Wheeler standard from Batson’s “inference” standard, the California courts at the time of Carrera’s 1983 trial applied Wheeler’s “reasonable inference” standard even though the Batson decision was years in the future. See People v. Fuller, 136 Cal.App.3d 403, 186 Cal.Rptr. 283, 296 (1982) (“[A] fair reading of Wheeler requires only that the court find a reasonable inference of group bias once an appropriate foundation is laid.”).
Furthermore, the California Supreme Court would have been required to apply the Batson standard to Carrera’s 1989 appeal. The Supreme Court held in Batson v. Kentucky that a defendant creates a prima facie case of unconstitutional jury selection by raising an “inference of purposeful discrimination.” Batson v. Kentucky, 476 U.S. 79, 94, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because Carrera’s case was pending on direct review when the Supreme Court decided Batson in 1986, Batson governed Carrera’s case on appeal to the California Supreme Court. See Griffith v. Kentucky, 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The standard for showing a constitutional violation in Carrera’s case cannot be stricter than what the Supreme Court mandated in Batson v. Kentucky. See Cooper v. Aaron, 358 U.S. 1, 18, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958) (“the federal judiciary is supreme in the exposition of the law of the Constitution”).
The Sixth Amendment guarantees defendants the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Carrera had received effective assistance, there is a “reasonable probability” that he would have succeeded in his Wheeler claim. See id. at 694, 104 S.Ct. 2052. And even if a Wheeler objection failed to persuade the trial judge, the objection would have preserved the Wheeler motion so that Carrera could have raised it on his direct appeal. Thus, defense counsel’s incompetence deprived Carrera of his opportunity to raise a Wheeler motion before the state trial court and, because this was a death penalty case, on direct appeal to the California Supreme Court. See Cal. R. Ct. 8.600 (“If a judgment imposes a sentence of death, an appeal by the defendant is automatically taken to the [California] Supreme Court.”).
As a result of defense counsel’s incompetence and the prejudice Carrera suffered, I would grant his request for Habeas relief.
I. Carrera’s Attorney Fell Below an Objective Standard of Performance in Failing To Present a Wheeler Motion
There are a number of reasons why defense counsel Huffman may have failed to present a Wheeler motion. But none of *1113 these reasons was strategic and none was excusable. For example, Huffman was defending Carrera against a murder charge brought by the District Attorney’s office, while also working with that same District Attorney’s office to secure the conviction of her husband, who shot her in the arm and told her that he “meant to kill” her. Huffman’s divided loyalties may have dulled her vigorous representation of Carrera.
Or perhaps Huffman failed to make a Wheeler motion because she was simply— and woefully — unprepared. . Huffman rushed to trial without an investigator because her investigator had been her husband — until the time he tried to kill her. She had no money to hire a new one because she faced bankruptcy and was saddled with more than $100,000 in debt. So, she cut corners. Unprepared and distracted, Huffman may not have been aware that the prosecutor’s disproportionate strikes of Hispanic jurors warranted an objection.
We -will never know why Huffman sat silently at counsel table while the prosecutor struck six out of the eight prospective Hispanic jurors, despite the fact that Wheeler had been on the law books for five years. When asked in a declaration prepared for Carrera’s direct appeal why she made no Wheeler motion, Huffman said: “I don’t know why at this time. No strategic reason.”
But any competent attorney would have objected to the prosecutor’s highly disproportionate peremptory challenges of Hispanic jurors. When this case was on appeal to the California Supreme Court, a defense attorney, Guyton Jinkerson, who in the past had qualified as an expert on ineffective assistance said as much in evaluating Huffman’s performance. Jinkerson declared in 1987 that Huffman’s performance “fell below an objective standard of reasonableness under the prevailing professional norms.” He added that but for Huffman’s “unprofessional errors, the result of the proceeding would have been different.”
Indeed, I suggest that under the performance prong of Strickland v. Washington, Huffman’s failure to raise a Wheeler motion clearly “fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Her silence during these proceedings was not a “strateg[ic] choice ... within the range of professionally reasonable judgments.” Id. at 699, 104 S.Ct. 2052. Rather, it was ineffective performance. The majority does not contest this point. Maj. op. at 1107-08. Instead, the majority opinion denies Carrera’s claim based on Strickland’s prejudice prong, finding that Carrera’s Wheeler motion would not have succeeded, had Huffman raised it.
II. Carrera Suffered Prejudice as a Result of his Attorney’s Failure to Make a Wheeler Motion
To demonstrate Strickland prejudice, Carrera must show that there is a “reasonable probability” that the outcome would have been different but for his attorney’s error. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. We’ve interpreted “reasonable probability” to mean “one sufficient to undermine confidence in the outcome, but ... less than the preponderance more-likely-than-not standard.” Lambright v. Schriro, 490 F.3d 1103, 1121 (9th Cir.2007) (internal quotations omitted).
The majority holds that Carrera cannot show a reasonable probability that he would have succeeded in challenging the striking of six of the eight Hispanic jurors. See Maj. op. at 1108. But Carr-era’s evidence of unconstitutional racial bias matched Wheeler’s examples of evidence that demonstrates prejudicial jury *1114 selection. The prosecutor struck “most” of the Hispanic jurors. See Wheeler, 148 Cal.Rptr. 890, 583 P.2d at 764. He also “used a disproportionate number of his peremptories against the group” by directing thirty-five percent of his strikes against Hispanics although they comprised only sixteen percent of the jurors in the box. See id.
Since no Wheeler challenge was actually made, it is hard to know what explanation the prosecutor would have provided for his strikes of Hispanic jurors. Nonetheless, the majority offers a few “obvious” explanations from its reading of the record. See Maj. op. at 1108. Upon closer scrutiny, however, these explanations are neither obvious nor reasonable.
A. The Record Does Not Show Legitimate, Non-Prejudicial Reasons for Striking the Hispanic Jurors
1.Prospective Juror Lawrence Martinez
The majority concedes that the peremptory strike of Lawrence Martinez “was problematic.” See Maj. op. at 1108. Martinez “unequivocally expressed his ability to impose the death penalty,” had no family members with any type of criminal history, and had no connection to any of the parties or witnesses in Carrera’s case. Maj. op. at 1108. Striking Martinez was improper. As California Justice Stanley Mosk emphasized two years before he presided over Carrera’s appeal, “[t]he exercise of one improper challenge is, of course, sufficient to establish a [Wheeler ] violation.” People v. Ledesma, 43 Cal.3d 171, 233 Cal.Rptr. 404, 729 P.2d 839, 881 (1987) (Mosk, J., concurring). Had defense counsel Huffman objected to prosecutor Vedrasco’s improper strike of Martinez, that objection alone could have established a Wheeler violation.
2.Prospective Juror Petra Celedón
The majority finds an “obvious” reason for striking Petra Celedón. According to the majority, “prospective juror, Petra Celedón, appeared bitter about being called to jury service.” Maj. op. at 1108. But as Celedón herself clarified, she was not bitter about jury service. A special education teacher, Celedón was sorry she was absent from school on the day she reported for jury duty in particular. As she explained: “this is a special day for [students] and some of them have been very anxious because I am not going to be there today.” Prospective jurors were told that the trial would not start until the following week, after the end of the school year. Celedón told the prosecutor that after school finished for the year, she would have no problem serving as a fair juror. But while Celedon’s school let out for the summer well before the start of trial, the prosecutor nonetheless struck her, and the majority sees no problem.
3.Prospective Juror Alice Hernandez
The majority finds an “obvious non-discriminatory” reason for the prosecutor’s strike of Alice Hernandez: she “worked at the juvenile detention facility where Carr-era’s co-defendant was held.” Maj. op. at 1108. Under questioning by Huffman, Hernandez stated that she worked in housekeeping, did not know the co-defendant, and had never heard of the case. Furthermore, the prosecutor never asked Hernandez any questions about her employment or whether her employment had any impact on her ability to serve as an impartial juror. This lack of follow-up questioning raises a red flag under Green v. LaMarque, 532 F.3d 1028, 1033 (9th Cir.2008), which explained that if a prosecutor challenges a juror for a factor on which he asked no questions, that lack of further questioning tends to establish that *1115 the factor was pretextual. Had the prosecutor given the same reason for striking Hernandez as the majority advances, this court likely would have found the reason to be pretext. Nevertheless, the majority is somehow comfortable that Hernandez was struck because she worked in housekeeping at the juvenile detention center, not because she was Hispanic.
4. Prospective Juror Maria Carrillo
In the case of Maria Carrillo, the majority speculates that the prosecutor struck her because she “had a son who had a criminal record.” Maj. op. at 1108. Again, this explanation is less than satisfying in light of this case’s record. As a teenager, Carrillo’s son was arrested once for stealing. The arrest occurred fifteen years before Carrera’s trial. When the prosecutor asked Carrillo whether she had any bad feelings toward the court or the police, she answered no. The majority’s justification is even less convincing because the prosecutor did not exercise peremptory strikes against two white jurors even though their sons had more serious criminal records. Those records involved convictions for theft and drug possession, and even prison time.
The majority’s speculation, had it been offered by the prosecutor, would have fallen under the Supreme Court’s definition of pretext. See Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (“If a prosecutor’s proffered reason for striking a [minority] panelist applies just as well to an otherwise-similar [non-minority] who is permitted to serve, that is evidence tending to prove purposeful discrimination”); see also Snyder v. Louisiana, 552 U.S. 472, 483-84, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). This court found pretext where a prosecutor claimed that he discharged a black juror because her relative had a criminal history while he seated white jurors whose relatives had equivalent criminal histories. Green, 532 F.3d at 1033. The majority seeks to justify the prosecutor’s exercise of a peremptory strike against Carrillo stating reasons this court has rejected when offered by a prosecutor. I cannot go along with that.
5. Prospective Juror Mary Garcia
The majority justifies the strike of Mary Garcia because, the majority insists, Garcia “told the court at the beginning of her voir dire that she could not impose the death penalty, though she later said she could do so.” Maj. op. at 1108. As the majority opinion concedes, Garcia said that she could impose the death penalty and that she would, in appropriate circumstances. Asked by the court if she could “think of a case where the crime for instance is so vicious that the death penalty should be imposed,” Garcia said “yeah.” Asked whether she could vote for the death penalty in such a case, she said “yes.” Asked once more by the court whether she opposed the death penalty, Garcia gave her final answer: “no.” But, Thomas Yale, a white juror, also expressed reservations about the death penalty. Nevertheless, the prosecutor did not exercise a peremptory strike against Yale, and he served as a juror.
In short, the record shows one peremptory strike against a Hispanic juror that even the majority opinion concedes to be “problematic” and four strikes of Hispanic jurors where there is no plausible explanation other than racial prejudice. This record cried out for Carrera’s counsel, Huffman, to make a Wheeler objection. When Carrera’s case was on appeal to the California Supreme Court, prosecutor Vedrasco filed an affidavit that he “could have come up with specific reasons justifying each of [his] challenges.” That statement is unsupported by the record.
*1116 Moreover, the prosecutor’s credibility is doubtful, given his misconduct in prosecuting the ease. This misconduct was so severe that the U.S. District Court vacated Carrera’s death sentence because the court determined that the prosecutor had “elicited contradictory evidence,” “argued inconsistently” at the separate trials of Carrera and the juvenile co-defendant, and “concealed the fact of inducements to inmate witnesses.” Carrera v. Ayers, No. 1:90-CV-00478-AWI, 2008 WL 681842, at *2 (E.D.Cal. Mar. 11, 2008). The question is not whether “the prosecutor might have had good reasons to strike the prospective jurors. What matters is the real reason they were stricken.” Paulino v. Castro, 371 F.3d 1083, 1090 (9th Cir.2004).
B. The Fact that Two Hispanic Jurors Were Seated Does Not Undermine a Wheeler Claim.
In attempting to demonstrate that Carr-era cannot show a “reasonable probability” of succeeding on his Wheeler claim, the majority concludes that the Wheeler motion would have likely failed under the law at the time because two Hispanic jurors made it onto the jury. Maj. op. at 1108— 09. To support this claim, the majority relies on a pair of California appellate court cases, People v. Boyd, 167 Cal.App.3d 36, 212 Cal.Rptr. 873, 880-82 (1985) and People v. Davis, 189 Cal.App.3d 1177, 234 Cal.Rptr. 859, 866 (1987). But those cases were not on the books at the time of Carrera’s 1983 trial. And in People v. Snow, the California Supreme Court overruled both cases before Carrera’s appeal, so they would never have governed Carrera’s Wheeler motion. See People v. Snow, 44 Cal.3d 216, 242 Cal.Rptr. 477, 746 P.2d 452, 457 (1987) (“we disapprove language in People v. Davis ... suggesting that the presence of two or three Blacks in the jury box following voir dire precludes the trial court from finding a prima facie case of exclusion.”).
People v. Snow explained that “the fact that the prosecutor passed or accepted a jury containing two Black persons [does not] end our [Wheeler ] inquiry, for to so hold would provide an easy means of justifying a pattern of unlawful discrimination which stops only slightly short of total exclusion.” Id. at 456-57 (internal quotations omitted). Just as in Carrera’s case, the prosecutor in Snow struck six out of eight minority jurors. Id. at 457. The defense attorney in Snow objected to those disproportionate strikes despite the prosecutor’s acceptance of two African-American jurors. In Snow, the California Supreme Court held that the defense attorney had successfully established a prima facie case for a Wheeler motion, and thus reversed the conviction. Id. at 457-58.
Unlike the defense attorney in Snow, Carrera’s defense counsel did not object to the disproportionate strikes of minority jurors. Had she done so, the California Supreme Court would have been guided by the decision it made three years earlier in Snow, and it likely would have found that the two Hispanic people on Carrera’s jury did not negate the other discriminatory peremptory juror strikes.
III. Conclusion
The Supreme Court has long held that a “fair trial in a fair tribunal is a basic requirement of due process.” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Carrera did not receive a fair trial because the prosecutor purposefully excluded Hispanic jurors, and Carr-era’s attorney did nothing to challenge him. The majority does not dispute that Carrera’s attorney erred, but it somehow finds that Carrera’s claim would not have had a “reasonable probability” of succeed *1117 ing. The majority reaches that conclusion by misreading the record and the law. I respectfully dissent.

. Huffman used her married name, Mendez, during Carrera's trial.